**Aurelio DUARTE, Wynjean Duarte, Individually and as Next Friend of S.D., a Minor, and Brandi Duarte**

v.

**The CITY OF LEWISVILLE, Texas.**

**CASE NO. 4:12–CV–169**

United States District Court,
E.D. Texas, Sherman Division.

Signed September 28, 2015

Richard Scott Gladden, Richard Gladden—Attorney at Law, Sarah Elizabeth

Roland, Sarah Roland, Defense Lawyer, Denton, TX, Doran George Sauer, Law Office of Doran Sauer, Austin, TX, for Aurelio Duarte, Wynjean Duarte, Individually and as Next Friend of S.D., a Minor, and Brandi Duarte.

W. Andrew Messer, Messer, Rockefeller & Fort, PLLC, Frisco, TX, for The City of Lewisville, Texas.

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

AMOS L. MAZZANT, UNITED STATES DISTRICT JUDGE

Came on for consideration the report and recommendation of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On August 21, 2015, the report of the Magistrate Judge was entered containing proposed findings of fact and recommendations that Defendant's Motion for Summary Judgment (Dkts. # 70–75) be granted, and Plaintiffs' claims be dismissed with prejudice. Having received the report and recommendation of the Magistrate Judge (Dkt. # 91), having considered Plaintiff's timely filed objections (Dkt. # 94), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and hereby adopts the Magistrate Judge's report (Dkt. # 91) as the findings and conclusions of the Court.

## BACKGROUND

The facts in this case originate from a child sex offender residency restriction ordinance (the "Ordinance"), enacted by Defendant City of Lewisville, Texas (the "City"), its application to Plaintiff Aurelio Duarte ("A. Duarte") and, by extension, its effects on A. Duarte's wife, Wynjean Duarte ("W. Duarte"), and children ("S.D." and "B.D."). The facts are set out in detail by the Magistrate Judge, and need not be repeated herein (see Dkt. # 91). In summary, A. Duarte is a convicted child sex offender and is required to register with the Texas Department of Public Safety's Sex Offender Database (the "Database") because of his conviction involving a minor; thus, Plaintiff is prohibited by the City's Ordinance from residing in the City "within 1,500 feet of any premises where children commonly gather," subject to a number of affirmative defenses (Dkt. # 70, Exs. 1, 3; Dkt. # 1 at 3, ¶ A). Plaintiffs' Complaint is comprised of two sets of claims: (1) claims asserted by Plaintiff A. Duarte himself, and (2) claims asserted by W. Duarte, S.D., and B.D. (the "Duarte Family") (Dkt. # 1 at 7, 9, 10). Plaintiffs assert that the imposition of a child predator buffer zone, or a restriction on where persons required to register on the Database because of convictions regarding a minor, may live in relation to "premises where children commonly gather," is a violation of the rights afforded them by and/or through the United States Constitution. *Id.*

The procedural posture of this case is lengthy, and is fully recited by the Magistrate Judge (Dkt. # 91 at 9–10). The Court will describe only those procedural events related to the instant motion and occurring since the Magistrate Judge's report and recommendation was entered. On June 5, 2015, the City filed its Motion for Summary Judgment and Brief in Support (Dkt. # 70–75) seeking summary judgment on all claims. On July 7, 2015, Plaintiffs filed their response (Dkt. # 84), and on July 17, 2015, the City filed its reply (Dkt. # 89). On August 21, 2015, after a thorough analysis of Plaintiffs' claims and the parties' summary judgment arguments, the Magistrate Judge entered

a report and recommendation finding Plaintiffs' claims should be dismissed with prejudice in their entirety (Dkt. #·91). Specifically, the Magistrate Judge recommended Plaintiff A. Duarte's claims for violations of (1) the Ex Post Facto Clause of Article 1, Section 10 of the United States Constitution; (2) the Double Jeopardy Clause of the Fifth Amendment; (3) the Equal Protection Clause of the Fourteenth Amendment; (4) his civil rights under 42 U.S.C. § 1983; and (5) the Due Process Clause of the Fourteenth Amendment be dismissed with prejudice. *Id.* The Magistrate Judge further recommended that the Duarte Family's procedural due process claim be dismissed with prejudice, and that all Plaintiffs' claims for declaratory and injunctive relief be dismissed with prejudice. *Id.*

On September 4, 2015, Plaintiffs timely filed their Written Objections to Magistrate's Findings, Conclusions, Report and Recommendation on Defendant's Motion for Summary Judgment (Dkt. # 94). Plaintiffs make essentially two objections to the report and recommendation of the Magistrate Judge: (1) A. Duarte objects to the Magistrate Judge's finding that the Ordinance does not deprive him of equal protection in violation of the Fourteenth Amendment; and (2) all Plaintiffs argue that they have been deprived of procedural due process under the Fourteenth Amendment by·application and enforcement of the Ordinance, and that they hold a "liberty interest" in residing together with immediate family within the areas of the City that are prohibited by the Ordinance (Dkt. # 91 at 34; Dkt. # 94 at 2–3). ·Notably, Plaintiff specifically states in his objections, "A. Duarte confines his objections, in this response to the Magistrate's report, to the claims stated above, denial of procedural Due Process ,and Equal Protection, and hereby abandons all other claims" (Dkt. # 94 at 3). Accordingly, the report

and recommendation of the Magistrate Judge is hereby adopted regarding A. Duarte's claims for violations of the . Ex Post Facto Clause, the Double Jeopardy Clause, and his civil rights under 42 U.S.C. § 1983, and the Court finds these claims should be dismissed with prejudice. The Court will now consider Plaintiffs' objections related to the equal protection and procedural due process claims in turn.

## I. Equal Protection

A. Duarte asserts that the Ordinance deprives him of his constitutional right to Equal Protection of Law in violation of the Fourteenth Amendment to the United States Constitution (Dkt. # 1 at 12; Dkt. # 91 at 29). A. Duarte asserts that the Ordinance places persons into two classes, both of which involve persons who are required to register as child sex offenders under Texas law (Dkt. # 84 at 16; Dkt. # 91 at 30). The first class of individuals (which includes A. Duarte) is comprised of child sex offenders who are not on community supervision and are subject to the residency restrictions in the Ordinance. *Id.* The ·second class encompasses sex offenders who at the time the Ordinance went into effect were on community supervision and were judicially relieved ·from compliance with the one-thousand (1,000) foot residency restriction otherwise required as a condition of their supervision under Section 13B of Article 42.12 of the Texas Code of Criminal·Procedure (which will be discussed in greater detail *infra* ). *Id.* Individuals in the second class are not required to comply with the residency restrictions under one of the six (6) affirmative defenses available in the Ordinance (Dkt. # 70, Ex. 1 at 4–5; Dkt. # 91 at 30). A. Duarte argues that the imposition of the residency restriction on him, but not the second class of sex offenders, deprives

him of equal protection (Dkt. # 84 at 16; Dkt. # 91 at 30).

The Magistrate Judge first analyzed whether the Ordinance involves a suspect class or a fundamental right in order to determine which judicial scrutiny test is appropriate to use, and found that sex offenders and/or persons included on the Texas sex offender registry are not a suspect class (Dkt. # 91 at 30–31 (citing *Stauffer v. Gearhart*, 741 F.3d 574, 587 (5th Cir.2014))). The Magistrate Judge further found that, although A. Duarte argued that he has a fundamental right to live where he wishes and that the Ordinance constitutes a direct regulation on family affairs and/or his right to associate, no fundamental right is implicated by the Ordinance. *Id.* at 31–34. Accordingly, the Magistrate Judge applied the rational basis test stating that "the Ordinance will be upheld as long as it is rationally related to a legitimate government purpose." (Dkt. # 91 at 34 (citing *Hines v. Alldredge*, 783 F.3d 197, 202–03 (5th Cir.2015)). The Magistrate Judge found that there is a conceivable set of facts that provides a rational basis for the imposition of the Ordinance, and recommended that A. Duarte's equal protection claim be dismissed. *Id.*

### A. The Magistrate Judge Properly Applied the Rational Basis Test

A. Duarte does not object to the Magistrate Judge's finding that the Ordinance should be analyzed using the "more deferential" rational basis test (Dkt. # 94 at 13). Accordingly, the Court focuses on A. Duarte's argument that the Magistrate Judge failed to properly analyze—under the test set forth in *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 441, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)—whether "A. Duarte (Class [1]) has a 'distinguishing characteristic,' in relation to those exempted by the [Ordinance] (Class [2]), that is 'relevant to interests the State has the authority to implement'" (Dkt. # 94 at 13).[1] A. Duarte also contends that the City must demonstrate that the different and greater burden imposed on A. Duarte by application of the Ordinance (in relation to the second class of individuals who are not so burdened) constitutes a "rational means to serve a legitimate end." *Id.* A. Duarte argues that the Magistrate Judge's failure to apply these tests constitutes error.

As an initial matter, the "test" advocated by A. Duarte is not the test described by the Supreme Court in *Cleburne*, and the quotes and citations from *Cleburne* are somewhat taken out of context.[2] The Su-

---

1. In *Cleburne*, the United States Supreme Court considered whether an ordinance, which required a home for the intellectually disabled to acquire a special use permit prior to leasing a building for the operation of the facility, violated the Equal Protection Clause. 473 U.S. at 435–36, 105 S.Ct. 3249. The lower court, the Fifth Circuit, previously found that intellectual disability was a quasi-suspect classification and that it should assess the validity of the ordinance using intermediate-level scrutiny. *Id.* at 436, 105 S.Ct. 3249. However, the Supreme Court found that classification as intellectually disabled did not merit heightened scrutiny, and applied the rational basis test to determine that the ordinance, "rest[s] on an irrational prejudice

against the [intellectually disabled]," and violated the Equal Protection Clause. *Id.* at 449–50, 105 S.Ct. 3249.

2. A. Duarte's proposed "test" comes from a portion of *Cleburne* in which the Supreme Court discussed the application of heightened review to differential treatment based on age and cited its decision in *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), explaining:

> The lesson of *Murgia* is that where individuals in the group affected by a law have distinguishing characteristics relevant to interests the State has the authority to imple-

preme Court held in *Cleburne* that the Equal Protection Clause mandates "all persons similarly situated should be treated alike," and that "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* at 439–40, 105 S.Ct. 3249. The Supreme Court explained that the general rule gives way when a statute classifies individuals by race, alienage, or national origin (which are then subjected to strict scrutiny), or gender (which are then subjected to heightened scrutiny). *Id.* at 440, 105 S.Ct. 3249. Finding none of those classifications present in *Cleburne*, the Supreme Court considered whether the ordinance was "rationally related to a legitimate governmental purpose." *Id.* at 446, 105 S.Ct. 3249. The Supreme Court stated that the state "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational," and emphasized "some objections—such as 'a bare... desire to harm a politically unpopular group,' are not legitimate state interests." *Id.* at 446–47, 105 S.Ct. 3249 (internal citations and quotations omitted).

This is the proper test; the Magistrate Judge undertook such an analysis here. The Magistrate Judge first determined whether any fundamental rights or sus-

pect classifications were implicated by the Ordinance. Finding none, the Magistrate Judge assessed whether the Ordinance was "rationally related to a legitimate government purpose" (*See* Dkt. # 91 at 34). "As long as there is a *conceivable* rational basis for the official action, it is immaterial that it was not *the* or *a* primary factor in reaching a decision or that it was not actually relied upon by the decision makers or that some other nonsuspect irrational factors may have been considered." *Reid v. Rolling Fork PUD*, 854 F.2d 751, 754 (5th Cir.1988) (emphasis in original). The Magistrate Judge concluded that A. Duarte failed to demonstrate that there is no conceivable basis for the official action taken by the Ordinance, and further found that the Ordinance rationally advanced the government's interest in protecting children from the risk of recidivism among child sex offenders (Dkt. # 91 at 24–25, 34). This Court agrees. Federal courts have consistently found that legislatures have a clear, compelling interest in protecting children from recidivist sex offenders, and there is a rational connection between prohibiting convicted child sex offenders from living within 1,500 feet of places where children commonly gather and the nonpunitive goal of protecting children from recidivist sex offenders.[3] Further, "[w]here there is such a rational connection to a non-punitive purpose, it is not for

ment, the courts have been very reluctant... to closely scrutinize legislative choices as to whether, how, and to what extent those interests should be pursued. In such cases, the Equal Protection Clause requires a rational means to serve a legitimate end.

*Cleburne*, 473 U.S. at 441–42, 105 S.Ct. 3249. Here, the individuals affected by the Ordinance have the "distinguishing characteristic" of being convicted child sex offenders, and there is no need to identify a second characteristic that distinguishes A. Duarte in relation to other child sex offenders. Accord-

ingly, the legal "test" advocated by A. Duarte does not apply to his equal protection claim.

3. *See, e.g., Graham v. Henry*, No. 06CV381, 2006 WL 2645130, at *9 (N.D.Okla. Sept. 14, 2006) (where the court denied plaintiff's request to enjoin enforcement of a statute that prohibited sex offenders from living within 2,000 feet of a school premises, quoting the Oklahoma legislature that "sex offenders who commit other predatory acts against children and persons who prey on others as a result of mental illness pose a high risk of re-offending after release from custody."); *Smith v. Doe*, 538 U.S. 84, 90, 123 S.Ct. 1140, 155 L.Ed.2d

the courts to second-guess the state legislature's policy decision as to which measures best effectuate that purpose." *Doe v. Bredesen,* 507 F.3d 998, 1006 (6th Cir. 2007). The Court finds the Magistrate Judge applied the proper test in considering A. Duarte's equal protection claim.

### B. The Ordinance Itself Does Not Classify Child Sex Offenders

A. Duarte's argument that the Ordinance further divides sex offenders into two classifications is false. The Ordinance requires all convicted child sex offenders who must register on the Database to comply with the 1,500 residency restriction; however, the Ordinance offers an affirmative defense for those child sex offenders who are currently on community supervision and the imposition of the required 1,000 foot restriction from places where children commonly gather has either been reduced or waived by the state court. *See* Tex. Code of Crim. P., Art. 42.12, Sec. 13B. Notably, the waiver of this restriction must be raised and determined before the trial court presiding over the community supervision.[4] *Id.* Thus, the Ordinance itself does not create a distinction or classification between child sex offenders; rather, the trial court proceedings and circumstances surrounding a defendant's community supervision control whether a defendant is eligible for the Ordinance's affirmative defense. In light of the aforementioned, A. Duarte's objection to the legal reasoning and conclusions

164 (2003); *Doe v. Bredesen,* 507 F.3d 998, 1006 (6th Cir.2007) (finding a rational relation due to "the unusually high risk of recidivism" among child sex offenders).

4. The reduction or waiver of the 1,000 foot restriction may be raised in various ways, for example: (1) a judge is not required to impose this condition if the defendant is a student at a primary or secondary school or if a defendant is required to reside at a particular residence or facility as a condition of commu-

of the Magistrate Judge related to his equal protection claim is overruled.

### C. The Magistrate Judge Correctly Found No Disparate Treatment

In addition, A. Duarte objects that the Magistrate Judge concluded there is no disparate treatment regarding the application of the Ordinance because the affirmative defense available to the first class of registrants does not depend on "individualized findings of dangerousness." (Dkt. # 94 at 14). A. Duarte states that the availability of the affirmative defense "clear[ly]" depends on judicial findings that a "child safety zone" is not "necessary to protect the public, given the nature and circumstances of the offense" (Dkt. # 94 at 14). As previously enumerated (*see* n. 4), there are a variety of scenarios in which the 1,000 foot "child safety zone" can be waived or modified by a state court, and only one of those involves a court making a determination that the "child safety zone" is not necessary to protect the public under the particular circumstances of the offense. Plaintiff's objection to the conclusion of the Magistrate Judge that the Ordinance's affirmative defenses do not require "individualized findings of dangerousness" is overruled.

### D. The Magistrate Judge Did Not Rely on A. Duarte's "Moderate" Risk Level

A. Duarte further objects that the Magistrate Judge erroneously relied on the

nity supervision; (2) a defendant may request that the child safety zone be modified because it creates an undue hardship for the defendant, or is broader than necessary to protect the public, given the nature and circumstances of the offense; and (3) a community supervision officer may permit a defendant to enter on an event-by-event basis into the child safety zone in certain circumstances. *See* Tex. Code of Crim. P., Art. 42.12, Sec. 13B.

Texas Department of Criminal Justice's assignment of a "moderate" risk level to A. Duarte when recommending that A. Duarte's equal·protection claim be dismissed·(Dkt. # 94 at 14). Contrary to A. Duarte's assertion, the Magistrate Judge did not rely on A. Duarte's risk level in its equal protection analysis, and Plaintiff's objection is overruled.

## II. Procedural Due Process (A. Duarte)

As set·forth in his summary judgment response brief, A. Duarte's procedural due process argument is that the Due Process Clause entitles him to notice and a hearing prior to the imposition of the Ordinance because he has been fully discharged from his sentence for conviction of a sex offense, he is neither on community supervision or parole, and he was deprived of the right to show that he, as an individual, is not dangerous to the community (Dkt. # 84 at 26–27; Dkt.· # 91 at 36). As noted by the Magistrate Judge, A. Duarte asserted only a procedural due process claim (expressly disclaiming a substantive claim), and postured that such claim could be resolved by determining whether he has a fundamental right to live where he wishes to live (Dkt. # 91 at 36).

The Magistrate Judge found that "to the extent that A. Duarte's argument is that the application of the Ordinance· to him deprives him of a fundamental right—the right to live where he wishes to live—without notice and a hearing, this argument fails" (Dkt. # 91 at 37). The Magistrate Judge found that there is no such fundamental right, and the Court agrees (Dkt. # 91 at 31–32). The Magistrate Judge explained:

> [O]ver thirty years ago, the Eighth Circuit said "we cannot agree that the right to choose one's place of residence is necessarily a fundamental right. Cases too numerous to mention have upheld restrictions on this interest." *Prostrollo v. Univ. of S.D.*, 507 F.2d·775, 781 (8th Cir.1974) (citations omitted). There is no basis to conclude that· this law· has changed in the intervening·years. *Miller*, 405 F.3d at·713–14. Indeed, in recent years, courts have repeatedly·rejected Plaintiffs' contention that·there is a fundamental, constitutional right to "reside in a certain place, i.e., with family members," saying "courts have determined there is no fundamental right to live where one·pleases."·*Graham*, 2006 WL 2645130, at *7. By way of example, in *People v. Leroy*, an Illinois appellate court determined that·a probationer had no fundamental constitutional right to live with his mother when she lived within 500 feet of a restricted area. 357 Ill.App.3d 530, 293 Ill.Dec. 459, 828 N.E.2d 769, 776 (2005). In *Spangler v. Collins*, a federal court in Ohio determined that a residency restriction of 1,000 feet did not implicate a fundamental right and therefore the statute was ·entitled to rational basis review. No. 2:11–cv–00605, 2012 WL 1340366, at *5 (S.D.Ohio Apr. 16, 2012). Further, in *Miller*, the Eighth Circuit considered and specifically rejected the argument that A. Duarte makes in this case that the Constitution establishes a fundamental right to reside at a location of your choosing. 405 F.3d at 714. As a result the court found that strict scrutiny should not apply, and that the residency statute would only be a violation if it was not rationally related ·to a legitimate government purpose. *Id.* Likewise,·this Court concludes that· the right to reside in·a location of one's choosing is not a fundamental right.

*Id.* at 32. The Magistrate Judge continued to find that the Ordinance applies to all child sex offenders required to register on the Database, and that the affirmative defenses do not allow individualized find-

ings of dangerousness. *Id.* at 38. The Magistrate Judge concluded, finding that A. Duarte was not entitled to notice and a hearing to prove a fact that is not relevant to the Ordinance—specifically, that he is not a danger to the community. *Id.*

### A. Inapplicability of the Mathews Test

In his objections, A. Duarte modifies his contention and now argues that the Magistrate Judge must apply a three-factor test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to determine "what process he is due;" not whether he has a fundamental right that was implicated by the Ordinance (Dkt. # 94 at 4). The test that must be applied (according to A. Duarte) requires the Court to identify:

(1) the private interest that will be effected by the official action;

(2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

(3) the government's interest, including the function involved and the fiscal and administrative burdens, that the additional or substitute procedural requirement would entail.

(Dkt. # 94 at 5 (citing *Mathews,* 424 U.S. at 335, 96 S.Ct. 893)).

After a review of the case law cited by the Parties, and also the recent Supreme Court decision, *Kerry v. Din,* —— U.S. ——, 135 S.Ct. 2128, 192 L.Ed.2d 183 (2015), the Court finds that the three-factor test cited by A. Duarte is inapplicable to the present case and need not be considered by this Court in its ruling. The Due Process Clause "provides that '[n]o person shall be . . . deprived of life, liberty, or property, without due process of law.'" *Id.* at 2132. "Although the amount and quality of process that [the Supreme Court's] precedents have recognized as 'due' under the Clause has changed considerably since the founding, [ ] it remains the case that *no* process is due if one is not deprived of 'life, liberty, or property.'" *Id.* (internal citations omitted) (emphasis in original). Thus, the first question that the Court must ask is whether the Ordinance deprives A. Duarte of any of these interests. *Id.*

There can be no legitimate argument (and none has been made) that A. Duarte has been deprived of a life or property interest as these rights are described both historically and in case law precedent. *Id.* at 2133. And it is precisely this fact that makes the Supreme Court's decision and its three-factor test in *Mathews,* which is relied on heavily by A. Duarte, inapplicable to the present decision before the Court. 424 U.S. at 333–34, 96 S.Ct. 893.[5] However, it is heavily disputed whether A. Duarte has been deprived of a "liberty interest."

5. In *Mathews,* the Supreme Court addressed whether the Due Process Clause required, prior to the termination of Social Security disability benefit payments, that the recipient be afforded an opportunity for an evidentiary hearing. *Id.* at 323, 96 S.Ct. 893. The Supreme Court opened its discussion by noting it was undisputed in *Mathews* that "the interest of an individual in continued receipt of these benefits is a statutorily created 'property' interest protected by the Fifth Amendment." *Id.* at 333, 96 S.Ct. 893. The Supreme Court went on to state that its precedent "consistently has held that some form of hearing is required before an individual is finally deprived of a property interest." *Id.* (citations omitted). Thus, the only remaining question for the Supreme Court was "what process is due" prior to the deprivation of the property interest. *Id.* The Supreme Court went on to apply the above-mentioned three-factor test before concluding that an evidentiary hearing was not required, and the administrative procedures in question comported with the requirements of due process. *Id.* at 349, 96 S.Ct. 893.

The Magistrate Judge determined that A. Duarte has not been deprived of a fundamental right or liberty interest, including an interest in residing wherever he wishes (Dkt. #91 at 31–32). A. Duarte now asserts (and claims he has always asserted) the infringement of a much narrower and more specific "liberty interest;" i.e., the "right, fundamental or otherwise, to reside as a family in areas of the City of Lewisville that are protected under the [Ordinance]." *Id.* at 7.

The Magistrate Judge found that neither A. Duarte (nor any other Plaintiff) has such a liberty interest (*See* Dkt. #91 at 32 and *supra* at p. 10). The Magistrate Judge's conclusion is well supported as courts have repeatedly rejected Plaintiffs' contention that there is a right to choose one's place of residence, a right to reside in a certain place, and/or a right to reside with family members. *Id.* This conclusion is further buttressed by the Supreme Court's recent holding in *Din.* 135 S.Ct. at 2133–34. Therein, the Supreme Court was asked to consider whether the denial of Din's husband's visa application without notice and a hearing was a violation of due process. *Id.* The Supreme Court found that "[b]ecause extending constitutional protection to an asserted right or liberty interest... place[s] the matter outside the arena of public debate and legislative action, and because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended, [t]he doctrine of judicial self-restraint requires

us to exercise the utmost care whenever we are asked to break new ground in this field." *Id.* at 2134 (internal quotations and citations omitted). "Before conferring constitutional status upon a previously unrecognized 'liberty,'" for which A. Duarte has not asked, argued, and/or offered case law in support, the Supreme Court requires "a careful description of the asserted fundamental liberty interest, as well as a demonstration that the interest is objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it was] sacrificed." *Id.* (internal quotations and citations omitted). A. Duarte offers no evidence or analysis that his asserted "liberty interest"—residing as a family in the City in areas in which he is prohibited from living by the Ordinance—is a liberty interest that is "objectively, deeply rooted" in our history or so implicit in our concept of liberty, "such that neither liberty nor justice would exist if [it was] sacrificed." *Id.* The Ordinance may, indeed, deprive A. Duarte of "something 'important,' but if that is the criteria for... [ ] procedural due process, we are in for quite a ride." *Id.* at 2138. Such a liberty interest does not exist, and Plaintiff's objection on this ground is overruled.[6]

## B. The Magistrate Judge Did Not Consider the Number of Available Properties

A. Duarte also objects to the Magistrate Judge's reliance on the number of avail-

---

6. Accordingly, even if the Court were to apply the three-factor test from *Mathews*, Plaintiff's argument would still fail. 424 U.S. at 333–34, 96 S.Ct. 893. Factor one requires the Court to ascertain the nature of the private interest that will be affected by the action, which the Court has already determined is not a liberty interest afforded constitutional protection. *Id.* Factor two requires to Court to consider the risk of an erroneous deprivation of the interest through the procedures

used. *Id.* The Court finds that the risk is low, considering that there is no liberty interest at stake of which Plaintiff could be deprived. Factor three requires the Court to look at the government's interest that additional safeguards or procedural requirements would entail. *Id.* The Court has no information regarding this factor to look at, but, in any event, this factor is irrelevant given the lack of a protected liberty interest. Plaintiff's objection is overruled.

able residential properties Plaintiffs could have leased or purchased outside the Ordinance's buffer zone (Dkt. # 94 at 6). A. Duarte contends that the Magistrate Judge ignored the real legal question which is whether A. Duarte holds a "liberty interest" to reside as a family in the areas of the City that are protected. *Id.* The Court has already answered that question in the negative. Moreover, the Magistrate Judge did not consider these available properties in finding that A. Duarte was not entitled to due process (*see* Dkt. # 91 at 36–38). Plaintiff's objection to the Magistrate Judge's consideration of the number of available properties is overruled.

## C. The Magistrate Judge Applied the Correct Law

A. Duarte also objects to the Magistrate Judge's reliance on "decisional law that involves the scope of liberty enjoyed by confined prisoners, parolees and persons on community supervision" (Dkt. # 94 at 7). Plaintiff contends that he has fully discharged his criminal sentence, is no longer confined or on community supervision, and is entitled to the full scope of liberty enjoyed by others similarly situated. *Id.* This statement is not entirely accurate, as A. Duarte is still a convicted felon,. and, as noted by the Magistrate Judge, "convicted felons are properly subjected to many restrictions on their constitutional rights which would be objectionable if imposed on non-felons." (Dkt. # 91 at 38 n. 25 (citing *Jones v. Helms,* 452 U.S. 412, 420–22, 101 S.Ct. 2434, 69 L.Ed.2d 118 (1981); *Doe v. Petro,* No. 1:05–cv–125, 2005 WL 1038846, at *1 (S.D.Ohio Oct. 24, 2006)). However, the Court has deter-

mined A. Duarte's asserted liberty interest is not one that is entitled to constitutional protection for A. Duarte or anyone similarly situated.

A. Duarte further asserts that the Magistrate Judge ignored the difference between sex offender "registration" statutes and sex offender "residency" statutes, and thus, ignored the greater intrusion that the residency restriction imposes on A. Duarte (Dkt. # 94 at 7). This is incorrect.[7] Moreover, this distinction between types of statutes is not relevant to the Magistrate Judge's determination of whether A. Duarte is entitled to procedural due process, but rather, on whether A. Duarte has established a liberty interest meriting constitutional protection. Plaintiff's objection that the Magistrate Judge ignored the distinction between statutes or relied on inapplicable law is overruled.

## D. The Magistrate Judge Correctly Found that Moore Does Not Apply

A. Duarte also objects to the Magistrate Judge's finding that *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), another case heavily relied on by Plaintiff, is inapposite to the present case (Dkt. # 94 at 7–8). A. Duarte cites *Moore* for the proposition that the Ordinance is unconstitutional because it "not only 'regulates,' but actually forbids Plaintiff A. Duarte from residing, either alone or with the Family Plaintiffs, 'in a certain location.'" *Id.* However, the Court agrees with the Magistrate Judge that *Moore* is distinguishable from the present case. First, the liberty interests asserted here versus those asserted in *Moore* are vastly different. In *Moore,* the ordinance in question "selects certain cate-

7. The Magistrate Judge specifically stated, "[t]his [analysis] applies regardless of whether the statutory scheme involves a sex offender registration statute or a sex offender residency restriction ordinance" (Dkt. # 91 at

38). Moreover, throughout the Magistrate Judge's report and recommendation, the Magistrate Judge noted whether each case relied upon involved a sex offender registration and/or residency statute.

gories of relatives who may live together and declares that others may not... [and] makes a crime of a grandmother's choice to live with her grandson." 431 U.S. at 499, 97 S.Ct. 1932. There, the Supreme Court asserted that "freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause," and that a number of cases "have consistently acknowledged a "private realm of family life which the state cannot enter." *Id.* A. Duarte's asserted liberty interest here does not implicate the private realm of family life, or "slice[ ] deeply into the family itself." *Id.* at 498, 97 S.Ct. 1932. Moreover, *Moore* considered substantive due process, instead of procedural, which A. Duarte explicitly denies he is asserting here. *Id.* at 503, 97 S.Ct. 1932. Accordingly, *Moore* does not apply, and Plaintiff's objection is overruled.

### E. The Magistrate Judge Did Not Rely on A. Duarte's "Moderate" Risk Level

A. Duarte again objects that the Magistrate Judge erroneously relied on the assignment of a "moderate" risk level to A. Duarte when finding that A. Duarte's procedural due process claim be dismissed (Dkt. # 94 at 9). Contrary to A. Duarte's assertion, the Magistrate Judge did not rely on A. Duarte's risk level in making its procedural due process finding, and Plaintiff's objection is overruled.

### III. Procedural Due Process (Duarte Family)

The Duarte Family contends that they hold a constitutionally protected liberty interest in residing together as a family with A. Duarte within the areas in which A. Duarte is prohibited by the Ordinance from residing, i.e., within the buffer zone (Dkt. # 94 at 3). The Duarte Family further argues that before they can be deprived of this constitutionally protected liberty interest, they must be afforded procedural due process. *Id.* The Magistrate Judge fully addressed the Duarte Family's claims, finding that the Duarte Family failed to identify what procedure was due, lacking, and/or inadequate (Dkt. # 91 at 38–40). It is important to note that the Duarte Family members are not convicted child sex offenders, are not required to register on the Database, and are not prohibited from doing anything by the Ordinance.[8] *Id.*

The Magistrate Judge further found that the Duarte Family does not have a fundamental right and/or liberty interest in residing wherever they want, including within the buffer zone (Dkt. # 91 at 39). As discussed *supra*, the Magistrate Judge's finding is bolstered by the recent Supreme Court decision in *Din*, in which the Supreme Court stated "[t]here is a simple distinction between government action that directly affects a citizen's legal rights, or imposes a direct restraint on his liberty, and action that is directed against a third party and affects the citizen only indirectly or incidentally." 135 S.Ct. at 2138. The Supreme Court further found that there is no such constitutional right to live in the United States with a spouse. *Id.* Again, the first question that the Court

---

8. The Magistrate Judge also found, and the Duarte Family does not object, that there is no evidence that S.D. or B.D. were deprived of "parental consortium" or a "custodial, caring, and nurturing relationship" with A. Duarte (Dkt. # 91 at 39). The Magistrate Judge found that the Duartes describe them- selves as very close, and state that their relationship has not been affected by this lawsuit or the Ordinance (Dkt. # 70, Ex. 13 (2015 deposition) at 28:11–25, 28:16–17; Ex. 6 (2015 deposition) at 7:21–23, 8:3–17; Ex. 14 at 10:9–18, 14:2–11; Ex. 15 at 9:19–22, 10:1– 14).

must answer is whether the Ordinance deprives the Duarte Family of "life, liberty, or property," and, after considering the arguments of the Duarte Family, that answer is "no." *Id.* at 132. The Ordinance does not affect the Duarte Family's legal rights, and does not impose a restraint on their liberties. The Ordinance affects the Duarte Family only incidentally. Accordingly, the Duarte Family's objection to the Magistrate Judge's finding regarding procedural due process is overruled.

### IV. Conclusion

Having considered each of Plaintiffs' timely filed objections (Dkt. # 94), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's report (Dkt. # 91) as the findings and conclusions of the Court.

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment and Brief in Support (Dkt. # 70) is **GRANTED.** Plaintiff A. Duarte's claims for violations of (1) the Ex Post Facto Clause of Article 1, Section 10 to the United States Constitution; (2) the Double Jeopardy Clause of the Fifth Amendment; (3) the Equal Protection Clause of the Fourteenth Amendment; (4) his civil rights under 42 U.S.C. § 1983; and (5) the Due Process Clause of the Fourteenth Amendment are dismissed with prejudice. The Duarte Family's procedural due process claim and all Plaintiffs' claims for declaratory judgment and injunctive relief are likewise dismissed with prejudice.

1. Both Parties intermittently cite the Ordinance using different names and/or ordinance numbers. By way of example, Plaintiffs, in their Complaint, cite to "Ordinance No. 3522–01–2008, § II, eff. 1–20–2008" [Dkt. 1 at 4–5]. Defendant, in its Motion for Summary Judgment, cites to both Ordinance No. 3533–01–2008, enacted January 28, 2008, and

All relief not previously granted is **DENIED**, including specifically Defendant's Motion to Exclude Plaintiffs' Designated Expert Phillip David Taylor (Dkt. # 90).

**IT IS SO ORDERED.**

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Christine A. Nowak, UNITED STATES MAGISTRATE JUDGE

Now before the Court is Defendant's Motion for Summary Judgment and Brief in Support [Dkts. 70–75]. After reviewing the Motion, Response, Reply, and any other relevant filings, the Court recommends that the Motion be **GRANTED.**

### BACKGROUND

Plaintiffs Aurelio Duarte ("A. Duarte" or "Plaintiff"), Wynjean Duarte ("W. Duarte"), S.D., a minor ("S.D."), and Brandi Duarte ("B.D."), bring this suit alleging that the ordinance entitled "Regulation of Child Predator Offender Residency" (the "Ordinance")[1] enacted by Defendant, the City of Lewisville (the "City" or "Defendant"), is unconstitutional.

Plaintiffs' Complaint is comprised of two sets of claims: (1) claims by Plaintiff A. Duarte himself, and (2) claims by W. Duarte, S.D. and B.D. (the "Duarte Family") [Dkt. 1 at 7, 9, 10]. The claims are considered herein in this order. Defendant is a municipal corporation incorporated under the laws of the State of Texas situated in Denton County, Texas, and is a

to Ordinance No. 3522–01–2008 [Dkt. 70 at 2, 6]. And Plaintiffs sometimes refer to the Ordinance as "SORRO" [Dkt. 1 at 5]. After the Court's review of the evidence, it is clear the Ordinance is properly denominated as Ordinance No. 3533–01–2008 ("the Ordinance"), which is how the Court refers to the Ordinance herein [*See* Dkt. 70, Ex. 1].

home-rule municipality with the power of self-government as described in Section 51.072(a) of the Texas Local Government Code [Dkt. 70, Ex. 2]. Plaintiffs assert that the imposition of a child predator buffer zone, or a restriction on where persons required to register on the Texas Department of Public Safety's Sex Offender Database because of convictions regarding a minor may live in relation to "premises where children commonly gather," is a violation of the rights afforded them by and/or through the United States Constitution [*see* Dkt. 1 at 7, 9, 10].

In 2004, Plaintiff A. Duarte was indicted by a Dallas County Grand Jury for the third degree felony offense of Online Solicitation of a Minor, in violation of Texas Penal Code § 15.031 [Dkt. 70, Ex. 3; Dkt. 1 at 3, ¶ A]. On May 19, 2006, A. Duarte was found guilty of that offense, and was sentenced to eight (8) years confinement in the Institutional Division of the Texas Department of Criminal Justice ("TDCJ"), and was placed on community supervision for a term of ten (10) years. *Id.* On May 31, 2007, the State of Texas filed a motion to revoke A. Duarte's probation or proceed with an adjudication of guilt because A. Duarte violated the conditions of his probation [Dkt. 70, Ex. 3, at 13, 15]. On June 5, 2007, A. Duarte's community supervision was revoked by the 282nd District Court of Dallas County, and he was sentenced to a term of confinement of three (3) years in the Institutional Division of the TDCJ [*Id.* at 17; Dkt. 1 at 4, ¶ B]. A. Duarte's sentence to confinement was fully discharged in June of 2010 [Dkt. 1 at 4, ¶ C], and A. Duarte admits that the Ordinance applies to him because he is required to register as a convicted child "Sex Offender" with the Texas Department of Public Safety [Dkt. 1 at 5, ¶ E]. The Duarte Family is not required to register as convicted sex offenders [Dkt. 70 at 33, n. 103].

In May of 2006, A. Duarte was referred to Central Psychological Services for sex offender psychological evaluation and treatment [Dkt. 70, Ex. 16 at 4]. Peter W. Henschel, Ph.D. ("Dr. Henschel"), conducted an evaluation and assessment of A. Duarte and recommended treatment [*see generally*, Dkt. 70, Ex. 16]. A. Duarte was ultimately discharged from treatment for noncompliance. *Id.* at 21. The TDCJ has developed risk levels for persons subject to sex offender registration [Dkt. 70 at 7, ¶ 7]. A. Duarte's risk level is currently moderate, and has been since its increase in March of 2009, indicating that he poses a moderate danger to the community and may continue to engage in criminal sexual conduct [Dkt. 70, Ex. 4 at 5–9].

Since his release from prison in June of 2010, A. Duarte is required to annually register in person with the local law enforcement authority where he resides [Dkt. 70, Ex. 4; Ex. 5; Ex. 6 (2012 deposition) at 131:19–21]. The registration requires A. Duarte to report, within seven (7) days of a change, information regarding: his name; job status (includes beginning and leaving employment and changing work locations); education status (includes a transfer from one educational facility to another); among other requirements [Dkt. 70, Ex. 4 at 2–3; Ex. 8 at 4, ¶ 14]. The failure to comply with any registration requirement is a felony offense.[2] Since 2010, A. Duarte has registered as a sex offender with the City of Lewisville until moving to Lake Dallas in 2013, and must annually register for five (5) more years [Dkt. 70, Ex. 4].

Because of the requirement that A. Duarte register with the Texas Department of Public Safety as a child sex offend-

---

2. Tex. Code of Crim. P. Art. 62.102.

er, A. Duarte must also comply with the residency restrictions set out in the Ordinance, which states in relevant part:

### REGULATION OF CHILD PREDATOR OFFENDER RESIDENCY

WHEREAS, the City Council of the City of Lewisville, Texas, finds, determines and declares that child predator offenders are a serious threat to public safety; and,

WHEREAS, the City Council finds and determines that the recidivism rate for released sex offenders is alarmingly high, especially for those who commit their crimes against children; and,

WHEREAS, the City Council finds and determines that establishing a policy to restrict the property available for residence of certain sex offenders will provide better protection for children gathering in the City; and,

WHEREAS, the City Council finds that persons convicted of offenses that involve either physical contact with minors or preparatory steps towards physical contact with minors are a greater risk to the safety of children who gather near areas where such offenders reside; and,

WHEREAS, the City Council determines that establishing regulations that restrict certain offenders from residing in areas that are at and near where there is a high concentration of children will provide better protection for children in the City by minimizing immediate access and proximity to children who are at and going to and from schools, parks, and day care centers, and that this residency restriction will foster the public safety of its citizens; and,

. . .

WHEREAS, it is the determination by the City Council that every effort should be made to protect its citizens from harm at the hands of certain sex offenders, and that the City's children are worthy of protection to the greatest extent afforded under the law;

NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF LEWISVILLE, TEXAS, THAT:

SECTION 1. The findings set forth above are incorporated into the body of this Ordinance as if fully set forth herein.

SECTION 2. The Lewisville City Code is hereby amended by adding a new section, which shall read as follows:

### ARTICLE 1. REGULATION OF SEX OFFENDER RESIDENCY

Sec. 1. Definitions. For the purpose of this article, the following terms, words and the derivatives thereof shall have the meanings given below:

. . .

*Premises where children commonly gather.* Includes all improved and unimproved areas on the lot where a public park, public playground, private or public school, public or semi-public swimming pool, public or non-profit recreational facility, day care center or video arcade facility is located, as those terms are or may be defined in Section 481.134 of the Texas Health and Safety Code, as amended. For purposes of this article, landscaped street medians are not public parks.

. . .

Sec. 2. Offenses. It is unlawful for a person to establish a permanent or temporary residence within 1,500 feet of any premises where children commonly gather if the person is required to register on the Texas Department of Public Safety's Sex Offender Database (the 'Database') because of conviction(s) involving a minor.

Lewisville Code of Ordinance, Ord. No. 3533–01–2008, enacted January 28, 2008 [Dkt. 70, Ex. 1]. Thus, the Ordinance prohibits a person who is required to register on the Texas Department of Public Safety's Sex Offender Registry because of a conviction involving a minor from residing within 1,500 feet of a school, park, day care center, public or semi-public swimming pool, or other area where children commonly gather, as specifically defined by the Ordinance.[3]

Both Parties seemingly agree Plaintiffs have deep roots in the City of Lewisville, and desire to live there as a family [Dkt. 1 at 4, ¶ C; Dkt. 70 at 9, ¶ 15]. In part due to the Plaintiffs' deep roots, prior to A. Duarte's release from prison W. Duarte began communicating with City representative Leslie Peck ("Ms. Peck"), the sex offender registrar in the Criminal Investigation Section of the Lewisville Police Department, to assist her and A. Duarte with finding available housing for their family that complied with the Ordinance[4] [Dkt. 70, Ex. 7; Ex. 13 (2015 deposition) at 13:8–10]. It is not disputed by any Party that Plaintiffs sought to purchase or lease a residential premises in the City of Lewisville. W. Duarte contacted Ms. Peck from 2009 through March 12, 2013,[5] and made approximately nine (9) inquiries[6] involving approximately thirteen (13) residences [Dkt. 70, Ex. 7].

Chronologically, the Court has ascertained that W. Duarte contacted Ms. Peck and inquired about the following residential properties: (1) On February 22, 2010, W. Duarte inquired with the City about 120 Ridgeway Circle, and was told it was a "NO," meaning that residence was within a protected zone and A. Duarte could not reside there [Dkt. 70, Ex. 7 at 9–11]; (2)

3. Section 5 of the Ordinance contains a number of affirmative defenses to prosecution, including: (1) the sex offender has already complied with all sex offender registration laws prior to the date of the adoption of the Ordinance; (2) the sex offender was a minor when he or she was convicted; (3) the sex offender is a minor; (4) the premises where children commonly gather was opened after the sex offender established the permanent or temporary residence and complied with all sex offender registration laws; (5) the information on the sex offender database is incorrect; and (6) the sex offender, at the time of the violation, was subject to community services supervision pursuant to Section 13B of Article 42.12 of the Texas Code of Criminal Procedure and the court reduced or waived the 1,000 foot restriction for a child free zone under Section 13B(a)(1)(B) of Article 42.112 of the Texas Code of Criminal Procedure, as it applies to the sex offender's residence [Dkt. 70, Ex. 1 at 4–5].

4. Ms. Peck frequently assists convicted child sex offenders in determining whether a residence is located within or outside of a protected zone [Dkt. 70, Ex. 7 at ¶ 4]. The City of Lewisville also maintains a publicly-available website that allows a person to access an interactive map of Lewisville that includes the Ordinance protected zones. *Id.* On the website, a user may enter a particular residence and the interactive map will place a marker on the residence on the map. *Id.* The address iseservices.cityoflewisville.com/citymaps, and has been available since approximately July 2012, but was not available to A. Duarte at the time the instant suit was filed. *Id.*

5. The affidavit of Ms. Peck states that W. Duarte began contacting her in 2009, and the records indicate that W. Duarte continued inquiring about various residences through March 12, 2013 [*See* Dkt. 70, Ex. 7]. The Court notes that inconsistencies in these dates appear in the Parties' factual statements; however, after a review of the evidence submitted, the Court finds that regardless of the dates alleged, the result is unchanged.

6. Defendant's Motion states that W. Duarte made eight (8) inquiries; however, upon the Court's review of the evidence submitted, the evidence reflects that W. Duarte made additional inquiries (at least nine (9)) [*See* Dkt. 70 at 7]. Regardless of the number of inquiries made by W. Duarte, the result reached by the Court is unchanged.

On March 31, 2010, W. Duarte inquired about 449 Edwards, and was informed that all of Edwards Street was within a protected area [Id. at 13]; (3) On April 23, 2010, W. Duarte inquired about 1006 Kingston, 1019 Woodmere, 1201 Kingston, and 915 Boxwood Drive, and was told that all of those addresses were a "NO"; however, Ms. Peck also informed W. Duarte that "if you go further down the street towards Kingston those are okay," and "some of the houses in the 14 and 1500 block of Kingston are okay, but you have to check on each house because one could be okay and then the one next door not" [Id. at 14–15]; (4) On April 26, 2010, W. Duarte requested that Ms. Peck check on 1610 Kingston, and was told that the residence was a "NO" [Id. at 18]; (5) On May 12, 2010, W. Duarte inquired about 1102 Eastwood Drive, and was told "1102 Eastwood Dr. is OK" [Id. at 20]; (6) On February 25, 2011, W. Duarte checked with Ms. Peck to see if 603 Northside was within a protected zone, and Ms. Peck confirmed that it was within a protected area [Id. at 5]; (7) On August 30, 2011, W. Duarte inquired about 660 Pine Street, and was informed on the following day that this residence was not in a protected zone, and A. Duarte could reside there [Id. at 4]; (8) On January 17, 2013, W. Duarte inquired about 650 Northside Avenue, and was told that this address was a "YES" [Id. at 3]; and (9) On March 12, 2013, W. Duarte inquired about 651 Pine, which was a "YES," and 519 Ferguson, which was a "NO." Id. at 1. A. Duarte and W. Duarte indicated that they attempted to purchase two of the homes outside the protected zone, but the homes were purchased before they could do so [Dkt. 70, Ex. 13 (2012 deposition) at 32:22–25; Dkt. 70, Ex. 7 at 23].[7]

From approximately 2010 through 2013, A. Duarte and his family resided at 324 E. Corporate Drive, Lewisville, Texas, in a one bedroom motel room [Dkt. 70, Ex. 5 at 2, 8; Ex. 6 (2012 deposition) at 138:4–7; Ex. 8 at ¶ 12]. At the time the Duarte family moved into the motel room it was not located within a buffer zone; however, it is now within a buffer zone due to the construction of a new public or semi-public swimming pool [Dkt. 70, Ex. 8 at 4, ¶ 12]. See also Duarte ex rel. Duarte v. City of Lewisville, 759 F.3d 514, 516 (5th Cir. 2014). Because the Plaintiffs established their residence there before the opening of the pool, Plaintiffs could continue to lawfully reside there as the residence was considered "grandfathered" under the Ordinance. Id. Notwithstanding, Plaintiff contends that due to the City's Ordinance, he was, and continues to be, "legally foreclosed" from living in Lewisville [Dkt. 1 at 5 ¶ F].

As of June 5, 2015, there were 495 residential properties outside the buffer zones that a registered child sex offender could legally reside in within the City of Lewisville [Dkt. 70, Ex. 8 at 1 ¶ 4]. Neither party has presented the Court with any evidence of exactly how many residential properties (for purchase or rent) were available outside the protected zones that a registered child sex offender could legally reside in at the time Plaintiffs filed their Complaint on or about March 26, 2012, and/or during the time frame of 2009–2013, when W. Duarte made inquiries. The Court has, however,

7. In her 2015 deposition, W. Duarte testified that she had many other undocumented phone calls or email inquiries with Ms. Peck regarding whether residences that were for sale or lease were within a protected zone [Dkt. 70, Ex. 13 (2015 deposition) at 12:15–25]. W. Duarte could not recall the specific conversations or inquiries made, and there are no records of these conversations; regardless of whether W. Duarte contacted the City additional times via phone regarding particular addresses, the result reached by the Court is unchanged.

been provided evidence by the City that between 2010 and April 2015, there were ninety-two (92) housing units sold, and thirty-six (36) housing units leased outside the Ordinance buffer zones [Dkt. 70, Ex. 12 at 2, ¶ 8]. And further that there were housing units available for sale and/or lease outside the Ordinance buffer zones in each year between 2010 and 2015, and that such residential units were available for a variety of time frames ranging from several weeks to ten (10) months. *Id.* The available residences are represented to include a wide range of housing for all income levels [Dkt. 70 at 9, ¶ 13; Dkt. 70, Ex. 8 at 2, ¶ 5].

Plaintiffs assert that the U.S. Census Bureau reports that in 2010, the City of Lewisville had 39,967 residential housing units within its city limits and that the City had a total population of 95,210 residents [Dkt. 84 at 7, ¶ I]. Of the total 39,967 residential housing units in the City of Lewisville, Texas in November of 2012, Plaintiff states that only eight (8) residential properties were legally available for purchase and only two (2) were available for lease [Dkt. 84 at 7, ¶ J]. Plaintiffs contend these ten (10) total properties constituted .025 percent of the total number of residential properties in Lewisville, Texas, at that time [Dkt. 84 at 8, ¶ K].

On or around August of 2013, the Duartes moved to Lake Dallas, Texas [Dkt. 70, Ex. 6 (2015 deposition) at 5:3–13; Ex. 5 at 15]. While Plaintiffs no longer live in Lewisville, Texas, it is undisputed that they continue to visit, work, shop, and attend school in Lewisville frequently [Dkt. 70, Ex. 6 (2015 deposition) at 13:24–14:13]. Indeed, Plaintiffs are "constantly in Lewisville," and visit W. Duarte's mother as a family at least every week, who resides in Lewisville inside a buffer zone [Dkt. 70, Ex. 6 (2015 deposition) at 14:3–13]. Both W. Duarte and B.D. work at Sears in Lewisville, and S.D. attends school at Lewisville High School and works at Raising Cane's restaurant in Lewisville after school [Dkt. 70, Ex. 13 (2015 deposition) at 27:13–23; Ex. 15 at 5:11–14, 6:1–5, 7:17–19]. The Duartes describe themselves as very close, and state that their relationship has not been affected by this lawsuit or the Ordinance [Dkt. 70, Ex. 13 (2015 deposition) at 29:10–16, 28:16–17; Ex. 6 (2015 deposition) at 7:21–8:17; Ex. 14 at 10:9–19, 14:2–11; Ex. 15 at 9:19–22, 10:1–14].

Procedurally, this case was filed on March 26, 2012 [Dkt. 1], and the City moved for dismissal based on lack of standing under Federal Rule of Civil Procedure 12 [Dkt. 6]. On October 23, 2012, the Court dismissed W. Duarte, S.D., and B.D.'s claims for lack of standing [*See* Dkt. 18; Dkt. 20]. Later, the City moved for summary judgment on A. Duarte's claims, and the Court found that there was no genuine dispute of material fact that A. Duarte lacked standing to challenge the Ordinance [Dkt. 26; Dkt. 50; Dkt. 53]. On July 3, 2013, the Court entered a final judgment dismissing Plaintiffs' claims with prejudice [Dkt. 54].

On July 24, 2013, Plaintiffs timely appealed [Dkt. 55]. *See Duarte*, 759 F.3d at 516. The Fifth Circuit reviewed the decision to dismiss for lack of standing *de novo*, and determined that (1) A. Duarte suffered an actual injury because he "is the target of the Lewisville ordinance restricting where registered child sex offenders, like him, can live" and; (2) W. Duarte, S.D., and B.D. also have standing to challenge the ordinance because it "interferes with the Duartes' lives 'in a concrete and personal way' which the Supreme Court has held is sufficient to confer standing." *Id.* at 518–19. The Fifth Circuit found that "the Duartes need not show they were 'legally foreclosed from purchasing or

leasing residential premises due solely to the... City of Lewisville," ... [but] need only show that the ordinance treats them differently from other would-be renters or homebuyers making it 'differentially *more burdensome*' for the Duartes to find a new place to live for standing purposes." *Id.* at 520. The Fifth Circuit noted that they expressed no opinion on whether the Duartes could ultimately show a constitutional injury to merit an award of damages or injunctive relief. *Id.* The Fifth Circuit also found that the Duartes met the traceable and redressable requirements of standing, and that the Duartes' constitutional claims were not moot since the Duartes asserted a claim for compensatory and nominal damages. *Id.* at 521. Accordingly, the Fifth Circuit reversed this Court's decision and remanded the case for further proceedings. *Id.* at 522.

On June 5, 2015, the City filed its Motion for Summary Judgment and Brief in Support [Dkts. 70–75] seeking summary judgment on all claims. On July 7, 2015, Plaintiffs filed their Response [Dkt. 84]. On July 17, 2015, the City filed its Reply [Dkt. 89].

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.,* 655 F.2d 598, 602 (5th Cir.1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247, 106 S.Ct. 2505. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548; *Byers v. Dallas Morning News, Inc.,* 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers,* 209 F.3d at 424 (citing *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505). The nonmovant must adduce affirmative evidence. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. The Court must consider all of the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir.2007).

## ANALYSIS

Plaintiff A. Duarte seeks monetary damages, declaratory and injunctive relief, and

recovery of fees against the City for alleged violations of: (1) the *Ex Post Facto* Clause of Article 1, Section 10 of the United States Constitution; (2) the Double Jeopardy Clause of the Fifth Amendment; (3) the Equal Protection Clause of the Fourteenth Amendment; (4) his civil rights under 42 U.S.C. § 1983; and (5) the Due Process Clause of the Fourteenth Amendment [Dkt. 1]. W. Duarte, S.D., and B.D. also assert a procedural due process claim, and seek damages, injunctive and declaratory relief, and fees. *Id.* In its Motion, the City seeks summary judgment as a matter of law against Plaintiffs on all claims because, the City asserts, Plaintiffs "have not shown a deprivation of any constitutional right, A. Duarte is not a member of a protected class, and the City's child predator buffer zone ordinance is a non-punitive civil regulatory scheme that is rationally related to the significant government interest of protecting children" from recidivist sex offenders [Dkt. 70 at 1].

In 1994, the Jacob Wetterling Crimes Against Children and Sexually Violent Offenders Registration Act was enacted. 42 U.S.C. § 14071. By 1996, every state, the District of Columbia, and the federal government responded by enacting a registry statute for those convicted of crimes against children and/or various sexual offenders. *Smith v. Doe*, 538 U.S. 84, 90, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). The United States Supreme Court has addressed these sex offender registry statutes and ruled that they are civil regulatory schemes designed to protect the public. *Id.* at 93, 123 S.Ct. 1140. The imposition of such measures is a "legitimate nonpunitive governmental objective." *Id.*

In addition to the sex offender registry statutes, by 2008, many Texas cities, like Lewisville, had enacted residency restrictions for those persons registered as a sex offender with the Texas Department of Public Safety. *See, e.g.,* Plano City Code Sec. 14–123 (2006); City of Arlington Ord. No. 7–079 (2006); City of Mesquite Ord. No. 3809 (2006); City of Richland Hills Ord. No. 1064–06 (2006); City of Saginaw Ord. No.2007–20 (2007); City of West Orange Ord. No. 35 (2006); City of League City Ord. No.2006–81 (2006). It is the Lewisville Ordinance imposing the residency restrictions that is at issue in this case.[8]

### A. Defendant's Evidentiary Objections

As an initial matter, in its Reply, the City objects to certain exhibits to Plaintiffs' Response. Specifically, Defendant objects to Plaintiffs' Exhibit 1 (and its subparts) [Dkt. 84, Ex. 1], pursuant to Federal Rule of Evidence 801(c) as inadmissible hearsay in the form of expert designation [Dkt. 90].[9] Plaintiffs' Exhibit 1 consists of three conclusions by Plaintiffs' proffered expert, Dr. Taylor, regarding the effectiveness of sex offender residency restrictions in reducing recidivism and promoting the safety of the community, and also includes Taylor's curriculum vitae and an annotated bibliography relied upon by Taylor [Dkt. 84, Ex. 1]. The Fifth Circuit has found that "[u]nsworn expert reports do not qualify as affidavits or otherwise admissible evidence for the purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment." *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir.2001); *see also Queen Trucking, Inc. v. General Motors Corp.*, No. 1:06–cv–052–C, 2007 WL 4458919, at *1 (N.D.Tex. June 8, 2007) (striking unsworn expert report from summary judgment record). Accordingly, the Court finds that Defen-

---

8. Plaintiffs did not contest any of Defendant's evidence.

9. Plaintiff has made no response to any of Defendant's evidentiary objections.

dant's objection is **SUSTAINED,** and Plaintiffs' Exhibit 1 is hereby **STRICKEN** from the record as hearsay.

Defendant also objects to Plaintiffs' Exhibit 2 [Dkt. 84, Ex. 2], which Defendant describes as a document made by W. Duarte a week before her deposition at the request of Plaintiffs' counsel listing the homes that W. Duarte allegedly spoke to Ms. Peck about [Dkt. 89]. Defendant objects under Federal Rules of Evidence 612 and 803(5) on the basis that the document constitutes "impermissible past recollection recorded and present recollection revived" [Dkt. 89 at 10]. Notably, however, Plaintiffs' Exhibit 2 is the affidavit of W. Duarte, and not a listing of homes as alleged by Defendant. W. Duarte's affidavit, which is based on her personal knowledge, is admissible summary judgment evidence under Federal Rule of Civil Procedure 56, and, as such, Defendant's objection to Plaintiffs' Exhibit 2 is **OVER-RULED.**

### B. A. Duarte's Claims

#### 1. Violations of the Ex Post Facto Clause

■ A. Duarte alleges that the Ordinance violates the *Ex Post Facto* Clause by subjecting him to additional or "retroactive" punishment following his 2008 conviction for Online Solicitation of a Minor [Dkt. 1 at 15]. "The *Ex Post Facto* Clause of Article I, Section 10 of the Constitution prohibits the States from enacting laws that increase punishment for criminal acts after they have been committed." *Doe v. Miller,* 405 F.3d 700, 718 (8th Cir.2005) (citing, *generally, Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L.Ed. 648, 39 (1798)). The framework for determining whether a statute imposes an increased punishment for crimes in violation of the *Ex Post Facto* Clause is set out by the Supreme Court in *Smith v. Doe,* 538 U.S. 84, 92–93, 97, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). The Court must first "ascertain whether the legislature meant the statute to establish 'civil' proceedings," or if the legislature intended to impose punishment. *Id.* at 92, 123 S.Ct. 1140. "If the intention of the legislature was to impose punishment, that ends the inquiry," and the law is necessarily unconstitutional. *Id.* If, however, the "intention was to enact a regulatory scheme that is civil and nonpunitive, [the Court] must further examine whether the statutory scheme is 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Id.* (quoting *United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). Because the Court ordinarily defers to the legislature's stated intent, "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.; Hudson v. United States,* 522 U.S. 93, 100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997); *see also Kansas v. Hendricks,* 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997); *United States v. Ursery,* 518 U.S. 267, 290, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996); *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 365, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984).

■ Whether a statute is civil or criminal in nature is a question of statutory construction. *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917 (1938). A statute's intent is discerned by looking first at the words of the statute, and "[i]f its words are clear and unambiguous, 'then our interpretative journey comes to an end, and we apply that plain meaning to the facts before us.'" *Moore v. Avoyelles Correctional Center,* 253 F.3d 870, 872 (2001) (citing *United States v. Barlow,* 41 F.3d 935, 942 (5th Cir.1994)). The Ordinance itself includes findings—the

"WHEREAS" paragraphs—which acknowledge that public safety and protection of the City's most vulnerable citizens, its children, are the primary goals of the child sex offender residency requirement [Dkt. 70, Ex. 1 at 1–2 ("[T]he City Council of Lewisville, Texas, finds, determines and declares that child predator offenders are a serious threat to public safety; and . . . the City Council determines that establishing regulations that restrict certain offenders from residing in areas that are at and near where there is a high concentration of children will provide better protection for children in the City . . . .") ]. This express, plain language indicates that the City of Lewisville sought to create a civil, and not criminal, remedy. *Id.* Plaintiffs do not dispute this fact [Dkt. 84 (which does not address the Ordinance language for intent) ], and other courts considering similar statutes have agreed. For example, in *United States v. Young,* 585 F.3d 199, 204–05 (5th Cir.2009), the Fifth Circuit considered whether a sex offender registration statute violated the *Ex Post Facto* Clause. In considering whether the legislature sought to create a civil remedy, the Fifth Circuit found that the express language of the statute sought to "establish[ ] a comprehensive national system for the registration of [sex] offenders" in order "to protect the public from sex offenders and offenders against children." *Id.* The Fifth Circuit found that this express language indicated that Congress intended to create a civil remedy, and not a criminal remedy in its enactment of the registration statute. *Id.* at 205; *see also United States v. Doyle,* No. 3:10–cr–42(DCB)(LRA), 2010 WL 2925388, at *5 (S.D.Miss.2010) (Sex Offender Registration and Notification Act is not punishment for past sex crimes, but rather is a civil regulation intended to protect the public). Accordingly, the Court finds that the Ordinance, on its face, is a civil regulatory ordinance because the intent of the Ordinance is to establish a civil proceeding and/or to provide a civil remedy—to prevent convicted child sex offenders required to register from having access to children where they commonly gather—not to impose punishment.

The next determination is whether the Ordinance is so punitive in purpose or effect that it negates the City's intent to be nonpunitive. *See Smith,* 538 U.S. at 92–93, 123 S.Ct. 1140. Because the Ordinance is a civil regulation on its face, A. Duarte must provide the "clearest proof" that the Ordinance is so punitive as to negate its civil intent. *Id.* at 92, 123 S.Ct. 1140. The clearest proof standard is a heavy burden, and as such, "some evidence will not do; substantial evidence will not do; and a preponderance of the evidence will not do. '[O]nly the clearest proof' will do." *United States v. W.B.H.,* 664 F.3d 848, 855 (11th Cir.2011) (quoting *Smith,* 538 U.S. at 92, 123 S.Ct. 1140). This requirement "is a steep one for those challenging a statute on those grounds." *Id.* at 854.

The Supreme Court established a framework in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–9, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), for determining whether the effects of a statute are so punitive as to negate the legislative intent to create a civil regulatory scheme (the "*Kennedy*" factors). *Smith,* 538 U.S. at 97, 123 S.Ct. 1140. The *Kennedy* factors (or guideposts) are, "whether, in its necessary operation, the regulatory scheme": (1) imposes an affirmative disability or restraint; (2) has been regarded in our history and traditions as a punishment; (3) promotes the traditional aims of punishment; (4) comes into play only on a finding of *scienter* ; (5) applies to behavior that is already a crime; (6) has a rational connection to a nonpunitive purpose; and (7) is

excessive with respect to this purpose.[10] *Kennedy*, 372 U.S. at 168–69, 83 S.Ct. 554. The Court will specifically consider each factor in turn in the order referenced above.[11]

### i. Whether the Ordinance imposes an affirmative disability or restraint

A. Duarte argues only that Defendant concedes that the Ordinance imposes "an affirmative disability or restraint" [Dkt. 84 at 10]. While the City agrees that the Ordinance imposes a minor restraint (in that child sex offenders are precluded from living within certain designated areas of the City) [Dkt. 70 at 16], the City also notes that there are no physical restraints imposed by the statute, and further asserts that any minor restraint imposed does not rise to the level of a disability contemplated by the *Kennedy* factors [*Id.*; Dkt. 89 n. 2]. *See Hendricks*, 521 U.S. at 363–65, 117 S.Ct. 2072 (the Ordinance here is significantly less restrictive than the involuntary commitment provisions for mentally ill sex offenders held to be non-punitive by the United States Supreme Court). The Supreme Court has instructed that "[i]f the disability or restraint is minor and indirect, its effects are unlikely to be punitive." *Smith*, 538 U.S. at 100, 123 S.Ct. 1140; *Miller*, 405 F.3d at 720–21 (minor and indirect restraints are unlikely to be punitive and sex offender registration laws do not have a punitive effect). Here, the Ordinance imposes no physical restraint and does not resemble the punishment of imprisonment. Thus, the Court finds that to the extent a restraint exists, such restraint is relatively minor and/or limited and does not give rise to a complete exclusion and/or the level of disability/restraint contemplated by the *Kennedy* court.

### ii. Whether the Ordinance has been regarded in our history and traditions as a punishment

The Ordinance on its face does not impose a circumstance that has been regarded in our history and traditions as punishment. Notwithstanding, A. Duarte asserts that the Ordinance essentially constitutes "banishment" of the child sex offenders subject to its residency restrictions [Dkt. 84 at 10–11]. "Banishment" refers to being sent away from a city, place, or country for a specified period of time or life, *United States v. Ju Toy*, 198 U.S. 253, 269–70, 25 S.Ct. 644, 49 L.Ed. 1040 (1905), or "expulsion from a country." *Doe v. Miller*, 405 F.3d 700, 719 (8th Cir.2005) (citing Black's Law Dictionary 154, 614 (8th ed.2004)). A. Duarte contends that because he has been unable to find a residence in the Lewisville community outside the buffer zones, that the Ordinance effectively banishes him from Lewisville [Dkt. 84 at 34].

In support of his proposition [Dkt. 84 at 10], A. Duarte cites to certain language from *Doe v. Baker*, No. 1:05–CV–2265, 2006 WL 905368, at *3 (N.D.Ga. Apr. 5, 2006). In *Doe*, a sex offender argued that the residence restrictions he was subject to violated the *Ex Post Facto* Clause. *Id.* The sex offender, Doe, argued that he was effectively banished because he was forced to vacate a particular place, his long-standing family home of many years. *Id.* However, after construing the definition of banishment as being forced to vacate and prevented from returning to a particular

---

**10.** The Supreme Court in *Smith* found the factors most relevant to the analysis are (1), (2), (3), (6), and (7). *Smith*, 538 U.S. at 97, 123 S.Ct. 1140; *U.S. v. W.B.H.*, 664 F.3d at 853–54.

**11.** These factors, which are neither exhaustive nor dispositive, are "useful guideposts" for whether the punitive effect negates the civil nonpunitive purpose.

location, the Georgia court held that the residence restriction was not banishment because the Plaintiff was able to find a residence with relative ease and in any event it did not prevent Doe from returning to the restricted area at any time of the day for any purpose, it only prevented him from establishing a residence there. *Id.* (citing *Miller*, 405 F.3d at 719). The court went on to state that "[a] more restrictive act that would in effect make it impossible for a registered sex offender to live in the community would in all likelihood constitute banishment which would result in an ex post facto problem if applied retroactively to those convicted prior to its passage." *Id.* at *4.[12] A. Duarte *contends that he is banished* from the Lewisville community because the Ordinance makes it impossible for him to obtain a residence in Lewisville [*See* Dkt. 84 at 34]. A. Duarte argues that the fact that he is able to travel freely in and out of the restricted areas does not diminish the disability placed on him by the residency restriction [Dkt. 84 at 11].

Under the record presented here, similar to the Court in *Doe v. Baker*, the Court cannot conclude that A. Duarte is subjected to banishment under the Ordinance. Although the record indicates that W. Duarte inquired about suitable residences on a number of occasions and was told that certain residences were within a protected

zone, it is undisputed there were homes for sale that were not within a protected zone [*see* Dkt. 70, Ex. 7 at 1, 20; Ex. 8]. Indeed, Plaintiffs acknowledge they were informed of at least two such properties, which they purport to have attempted to purchase [*see* Dkt. 70, Ex. 13 (2012 deposition) at 27:1–21; 31:21–25]. The City has presented evidence that, as of June 5, 2015, there were 495 residential properties in Lewisville that were outside the protected zones where a registered child sex offender could legally reside [Dkt. 70, Ex. 8 at 1, ¶ 4]. The City's evidence also indicates that there were 92 housing units for sale and actually sold and 36 housing units for lease and actually leased outside the Ordinance protected zones between 2010 and 2015 [Dkt. 70, Ex. 12 at 2, ¶ 8].[13] These housing units were available in a variety of price ranges and for varied lengths of time. *Id.* The evidence presented—which Plaintiff A. Duarte has not contested—clearly shows that residential properties (for purchase or lease), while perhaps not many in number, were available to A. Duarte. In addition, Plaintiffs' residence at 324 E. Corporate Drive, Lewisville, Texas, was grandfathered under the Ordinance [Dkt. 70, Ex. 8 at 4, ¶ 12]. *See also Duarte*, 759 F.3d at 516. Accordingly, A. Duarte was not legally foreclosed from and/or precluded from purchasing or leasing residential premises in the City of Lewisville.[14]

**12.** Plaintiff also cites *Banishment by a Thousand Laws: Residency Restrictions on Sex Offenders*, 85 Wash.U.L.Rev. 101, 135 (2007), which states, "sex offender exclusion zones fit all three of the elements of banishment" which are (1) expulsion in fact from a particular community, (2) removed with no institutional support, and (3) enforced extrajudicially with no opportunity for appeal and Zgoba, *Residence Restriction Buffer Zones and the Banishment of Sex Offenders: Have We Gone One Step Too Far?* (Criminology & Public Policy, 10(2) 391–399 (2011)).

**13.** The City's evidence on this issue was provided in large part by Master Peace Officer Kevin Deaver ("Officer Deaver") and Urban Planner Dan Sefko ("Mr. Sefko") [Dkt. 70, Ex. 8, 12]. Both Mr. Deaver and Mr. Sefko relied on the MLS and GIS databases in determining the number of available residences [Dkt. 70, Ex. 8 at 3; Ex. 12 at 2]. Officer Deaver also personally inspected each site in support of his affidavit [Dkt. 70, Ex. 8 at 3 ¶ 7].

**14.** Of note, other courts considering whether a sex offender residency statute constituted

Additionally, as in *Doe*, A. Duarte is free to travel in and out of these protected zones within the City of Lewisville, and still actively participate as a member of the Lewisville community for any other purpose other than that of establishing a residence. Indeed, the record amply reflects that Plaintiff still does frequently travel in and out of the protected zones to visit family and for purposes other than establishing a residence [Dkt. 70, Ex. 6 (2015 deposition) 13: 4–19; 14:3–13].[15] This does not constitute banishment; Plaintiff has not been exiled or expelled from Lewisville and thus, Plaintiff fails to provide this Court with the "clearest proof" otherwise. Accordingly, this factor weighs in favor of a finding that the Ordinance is not so punitive as to negate the legislature's civil intent.[16]

### iii. Whether the Ordinance promotes the traditional aims of punishment

A. Duarte contends that the Ordinance promotes the traditional aims of punishment—specifically, deterrence and retribution—and is therefore punitive in nature [Dkt. 84 at 11–12]. Defendant agrees that the Ordinance is designed to address the dangers of recidivism among persons previously convicted of sex offenses against children, and asserts that it is likely that the Ordinance also deters future offenders from committing these crimes [Dkt. 70 at 19]. However, in *Smith*, the Supreme Court made clear that "[t]o hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' ... would severely undermine the Government's ability to engage in effective regulation." 538 U.S. at 102, 123 S.Ct. 1140. The *Smith* court further explained that the regulatory scheme is reasonably related to the danger of recidivism posed by sex offenders. *Id.*

It is undisputed that the Ordinance prevents convicted child sex offenders from residing in areas near where children commonly gather, such as schools, pools, parks, and daycares [*see* Dkt. 70, Ex. 1]. While the residency requirement of the Ordinance is different than the registration statute upheld in *Smith*, the analysis employed remains the same and demands the same result herein—the mere existence of a deterrent effect does not provide a strong enough inference that the restriction is punishment. *See Smith*, 538 U.S. at 102, 123 S.Ct. 1140; *see also Hudson*, 522 U.S. at 94, 118 S.Ct. 488. The Ordinance is reasonably related to the danger

---

banishment have reached similar conclusions. *Miller*, 405 F.3d at 719–20. In *Formaro v. Polk County*, 773 N.W.2d 834, 843–44 (Iowa 2009), the Iowa court concluded that a residency restriction preventing a sex offender from residing within 2,000 feet of certain areas did not constitute banishment where the offender was able to find housing in a permissible location. Similarly, in *People v. Morgan*, 377 Ill.App.3d 821, 825–26, 317 Ill. Dec. 339, 881 N.E.2d 507 (Ill.App.2007), the Illinois court found that the offender who was prohibited from "residing" at his mother's house because it was less than 500 feet from a school was not banished because nothing prevented him from visiting his mother there. *Id.* The Illinois court concluded by saying "only a tortured reading of the term banishment could lead us to conclude otherwise."

*Id.* at 826, 317 Ill.Dec. 339, 881 N.E.2d 507; "). In *Graham v. Henry*, the Oklahoma court concluded that a residency restriction preventing a sex offender from residing within a 2,000 foot radius of certain areas did not constitute banishment. *Graham*, 2006 WL 2645130, at *5.

15. A. Duarte analogizes his ability to still freely travel within the City to incarcerated persons working along the highway during the day [Dkt. 84 at 11]. The Court is not swayed by this analogy.

16. Nor is there any evidence in the record that Plaintiffs were or have been unable to assimilate into their new community in Lake Dallas, which is another traditional aspect of banishment.

of recidivism posed by sex offenders. Accordingly, the Court finds that if the Ordinance does promote the traditional aims of punishment—deterrence and retribution—such goals are relatively minor, indirect effects of the Ordinance and are not enough to justify a finding that the Ordinance's purpose is punitive. Thus, the third factor also points in favor of concluding that the Ordinance is regulatory, not punitive.[17]

iv. *Whether the Ordinance comes into play only on a finding of scienter and whether the Ordinance applies to behavior that is already a crime*

In *Smith*, the Supreme Court held that these two factors (consolidated herein) were of little weight in determining whether the sex offender registration statute was a violation of the *Ex Post Facto* Clause. 538 U.S. at 105, 123 S.Ct. 1140. Specifically, the Supreme Court held that the regulatory scheme applied only to past conduct, which was, and remains, a crime. *Id.* The Supreme Court found that this was a necessary beginning point because recidivism was the concern of the statute, and the duties of registration imposed by the statute were not predicated upon a present or repeated violation. *Id.* The same is true in this case, and as such the Court finds that these two factors merit little weight in this Court's analysis. While the underlying sex offenses that require an individual to be subject to the sex offender registration statutes do require proof of *scienter* for the underlying conviction, the Ordinance itself does not require that finding [*see* Dkt. 70, Ex. 1; Dkt. 84 at 11]. Moreover, the Ordinance does not apply to behavior which is independently a

crime, separate and apart from the underlying conviction for a sex offense [Dkt. 84 at 12 ("Plaintiff Aurelio Duarte concedes that Defendant's [Ordinance] does not apply to behavior which is independently a crime.") ].[18]

v. *Whether the Ordinance has a rational connection to a nonpunitive purpose*

The most important factor in an *ex post facto* analysis is whether there is a rational connection between the challenged statute and its nonpunitive purpose. *Smith*, 538 U.S. at 102, 123 S.Ct. 1140. The Supreme Court in *Smith* noted that a "close and perfect fit" between the statute and its nonpunitive aim is not required. *U.S. v. W.B.H.*, 664 F.3d at 859 (citing *Smith*, 538 U.S. at 103, 123 S.Ct. 1140).

A. Duarte asserts that there is no rational connection between the Ordinance's requirement that he live at least 1,500 feet away from a location where children commonly gather, and the nonpunitive purpose of providing better protection for children in the City [Dkt. 84 at 12]. A. Duarte acknowledges that providing better protection for children is a legitimate and laudable objective; however, A. Duarte argues that this objective cannot be rationally or legally accomplished by the Ordinance. *Id.* Specifically, A. Duarte relies on the expert testimony of Dr. Taylor who attests that at the time the Ordinance was enacted in 2008, there was an "undiluted consensus among behavioral scientists and criminologists ... that sex offender residency restrictions *provide absolutely no* 'better protection for children' against the risk of being subjected to sexual abuse" [Dkt. 84

**17.** The fact that failure to comply with the Ordinance subjects a sex offender to criminal prosecution does not transform the statute from a civil scheme to a criminal punishment. It is not whether violation of the ordinance could result in punishment, but whether the

restrictions contained therein constitute "punishment." *Smith*, 538 U.S. at 90, 96, 123 S.Ct. 1140.

**18.** See footnote 15.

at 13 (emphasis in original)]. A. Duarte contends that while "not a single scientific article from any source has ever concluded that [sex offender residency statutes and/ordinances] make children 'safer,' a legion of articles have concluded they do not." *Id.* A. Duarte further contends that there is a fact issue regarding whether the City's interest in protecting its children can be rationally connected to the residency restriction. *Id.*

Because the testimony of Dr. Taylor has been stricken (*see supra* at 12), the Court cannot rely on it in deciding this Motion; notably however, even if the Court were to rely upon and/or consider A. Duarte's expert report and bibliography the result would be unchanged. The Court need only determine if the Ordinance has a rational connection between the stated purpose and the restriction placed on convicted child sex offenders; a perfect fit between ends and means need not exist. *See generally Moore v. Avoyelles Correctional Center*, 253 F.3d 870 (5th Cir.2001). Federal courts have consistently found that legislatures have a clear, compelling interest in protecting children from recidivist sex offenders. *Graham v. Henry*, No. 06CV381, 2006 WL 2645130, at *9 (N.D.Okla. Sept. 14, 2006) (where the court denied plaintiff's request to enjoin enforcement of a statute that prohibited sex offenders from living within 2,000 feet of a school premises, quoting the Oklahoma legislature that "sex offenders who commit other predatory acts against children and persons who prey on others as a result of mental illness pose a high risk of re-offending after release from custody."); *Smith*, 538 U.S. at 103, 123 S.Ct. 1140; *Doe v. Bredesen*, 507 F.3d 998, 1006 (6th Cir.2007) (finding a rational relation due to "the unusually high risk of recidivism" among child sex offenders). For example, in *Coston v. Petro*, 398 F.Supp.2d 878, 886 (S.D.Ohio 2005), the court considered an *ex post facto* challenge to a statute in which registered sex offenders were prohibited from residing within 1,000 feet of a school. The plaintiffs in *Coston* argued that the statute did not actually limit sex offenders' access to children and noted that a sex offender could still live in apartment buildings full of children or near parks or other places where children congregate. *Id.* The Ohio court found that the plaintiffs' criticism of the statute was valid from a policy standpoint, but it did "not detract from a rational conclusion that the safety of children is promoted when sex offenders are prohibited from living near schools." *Id.* The Ohio court recognized that "the Court does not sit to judge whether the legislature has made the best possible choice in attempting to protect children from sex offenders.... [and] the legislature's failure to address every conceivable situation where sex offenders may prey on children does not mean that [the statute] lacks a rational connection to the legislature's objective." *Id.*

Here, there is a rational connection between prohibiting convicted child sex offenders from living within 1,500 feet of places where children commonly gather and the nonpunitive goal of protecting children from recidivist sex offenders. Again, federal courts have consistently found that child sex offenders pose a high risk of recidivism, and even if this Ordinance is not the most effective means of offering protection to the community, specifically to its children, it is rationally connected to this goal, and "[w]here there is such a rational connection to a non-punitive purpose, it is not for the courts to second-guess the state legislature's policy decision as to which measures best effectuate that purpose." *Bredesen*, 507 F.3d at 1006. Indeed, the Eighth Circuit specifically and succinctly addressed this issue in *Miller*:

We think the decision whether to set a limit on proximity of 'across the street' (as appellees suggest), or 500 feet or 3000 feet (as the Iowa Senate considered and rejected),... or 2000 feet (as the Iowa General Assembly and the Governor eventually adopted), is the sort of task for which the elected policymaking officials of a State, and not the federal courts, are properly suited. The legislature is institutionally equipped to weigh the benefits and burdens of various distances... Where individuals in a group, such as convicted sex offenders, have distinguishing characteristics relevant to interests the State has authority to implement, the courts have been very reluctant... to closely scrutinize legislative choices as to whether, how, and to what extent those interests should be pursued.

*Miller*, 405 F.3d at 715–16. The Ordinance prevents convicted child sex offenders from residing near where children are likely to congregate, and is intended to reduce the likelihood that such offenders will have ready access to such locations where they can place children under predatory surveillance. The Ordinance is further intended to decrease the risk that a convicted child sex offender will reoffend. A reasonable legislator could believe that the means employed by the Ordinance would help prevent future attacks by recidivist sex offenders.

Accordingly, the Court finds that the Ordinance has a rational connection to its nonpunitive purpose. "Obviously, no law protects every person in every situation, just as no law ever stops a criminal who is determined to commit crime. That does not mean, however, that the legislature should not or cannot do what it can to reduce the risk of harm that recidivists actually present." *Doe v. Petro*, No. 1:05–cv–125, 2005 WL 1038846, at *4 (S.D.Ohio Oct. 24, 2006). This "most significant" factor weighs in favor of a determination that the Ordinance is nonpunitive.

### vi. Whether the Ordinance is excessive in relation to its purpose

A. Duarte contends that the Ordinance is excessive in relation to its purpose because "it does not even attempt to distinguish among its targets those who may, and those who under no circumstances would, pose a threat to children by reason of a lack of sexual control" [Dkt. 84 at 13]. A. Duarte asserts that the findings of Dr. Henschel, attached as an exhibit to the City's Motion, are not properly used to determine a sex offender's relative risk of recidivism, and the City did not consider these findings when it applied or enforced its Ordinance against A. Duarte. *Id.* at 14. A. Duarte further argues that the statute is clearly punitive, and urges the Court to consider three cases (not cited by the City) in support of his proposition: (1) *Doe v. Miller*, 298 F.Supp.2d 844 (S.D.Iowa 2004); (2) *Commonwealth v. Baker*, 295 S.W.3d 437 (Ky.2009); and (3) *Mikaloff v. Walsh*, No. 5:06–cv–96, 2007 WL 2572268 (N.D.Ohio Sept. 4, 2007). *Id.*

The Court, having examined each, finds Plaintiffs cited cases unpersuasive. *Doe v. Miller* and the reasoning contained therein has been overturned by the Eighth Circuit. 405 F.3d 700, 723 (8th Cir.2005). In *Commonwealth v. Baker*, the Kentucky Supreme Court found the residency statute in question punitive primarily because it did not contain a "grandfather" clause. 295 S.W.3d at 447. Because of the lack of such a clause, the statute's effect was to essentially expel individuals from their homes. *Id.* at 444. The court was concerned that the statute allowed for the potential eviction of an offender at any given time if a new school, playground, or other area was constructed within the re-

quired number of feet from the offenders' home. *Id.* Accordingly, the Kentucky Supreme Court found that the statute was excessive in its application because there was no individualized determination of dangerousness, and the fluidity and uncertainty of the residency restrictions placed an improper burden on the registered sex offenders in finding a residence. *Id.* The same or a similar situation was present in the third case, *Mikaloff v. Walsh*, where the Ohio court found that the sex offender residency statute was intended to be punitive, as it lacked a "grandfather" clause, and resulted in the eviction of individuals from their homes. 2007 WL 2572268, at * 9 (N.D.Ohio Sept. 4, 2007).

The Ordinance at issue in this case has a "grandfather" clause that allows a sex offender who has already established a residence at a particular location to be exempt from the Ordinance [Dkt. 70, Ex. 1 at 4–5]. It also does not require a sex offender to move from a residence upon the construction of some new location where children commonly gather. *Id.*; *see also Duarte*, 759 F.3d at 516. Further, the Ordinance applies only to child sex offenders, as opposed to the broader category of sex of-

fenders of both children and adults. *Id.* at 1. The Ordinance also contains multiple affirmative defenses that, if argued and proven, exempt the child sex offender from the residency restrictions. *Id.* at 4–5.

### vii. Conclusion

■ The Court's examination of the above factors and the evidence presented leads to the determination that Plaintiff A. Duarte cannot show by "clearest proof," that the effects of the Ordinance are so punitive as to negate the City's intent to impose a civil regulatory scheme. A. Duarte also contends that there are genuine issues of material fact that remain to be resolved under his *ex post facto* claims, which preclude dismissal [Dkt. 84 at 13]. However, A. Duarte does not state which facts are in dispute and has not disputed any of Defendant's evidence. It is clear the only issues for the Court to determine under A. Duarte's *Ex Post Facto* claim are legal issues. Therefore, the Court finds that the Ordinance is not a violation the *Ex Post Facto* Clause of the United States Constitution, and, accordingly, recommends that this claim be dismissed.[19]

**19.** Many courts, federal and state, have consistently and repeatedly rejected *ex post facto* challenges to laws that retroactively require sex offenders convicted before their effective date to comply with registration, surveillance, residence, and/or reporting requirements. *See, e.g., Roe v. Office of Adult Prob.*, 125 F.3d 47, 55 (2nd Cir.1997) (Connecticut statute); *Doe v. Pataki*, 120 F.3d 1263, 1285 (2nd Cir. 1997) (New York statute); *Cutshall v. Sundquist*, 193 F.3d 466, 476–77 (6th Cir.1999) (Tennessee statute); *Burr v. Snider*, 234 F.3d 1052, 1054–55 (8th Cir.2000) (North Dakota statute); *Femedeer v. Haun*, 227 F.3d 1244, 1253–1254 (10th Cir.2000) (Utah statute); *Moore*, 253 F.3d at 871 (Louisiana statute); *Herrera v. Williams*, 99 Fed.Appx. 188 (10th Cir.2004) (New Mexico statute); *Szczygiel v. Madelen*, 116 Fed.Appx. 224 (10th Cir.2004); *Weems v. Little Rock Police Dept.*, 453 F.3d 1010, at 1017–1020 (8th Cir.2006) (Arkansas sex offender residency restriction statute did

not violate *ex post facto*, due process, or equal protection clauses), *cert. denied sub nom. Weems v. Johnson*, 550 U.S. 917, 127 S.Ct. 2128, 167 L.Ed.2d 862 (2007); *Johnson v. Terhune*, 184 Fed.Appx. 622, 624 (9th Cir. 2006) (California sex offender registration statute did not violate *ex post facto*, double jeopardy, cruel and unusual punishment or equal protection clauses); *Steward v. Folz*, 190 Fed.Appx. 476, 478–79 (7th Cir.2006) (Indiana sex offender registration statute did not violate *ex post facto* or double jeopardy clauses); *Bredesen*, 507 F.3d at 1007–1008 (Tennessee sex offender monitoring statute did not violate *ex post facto* clause); *Anderson v. Holder*, 647 F.3d 1165, 1168–69 (D.C.Cir. 2011) (holding that, "like the sex offender registration requirement in *Smith*," the District of Columbia's requirement, premised on the plaintiff's conviction for a lifetime registration offense did not violate the *Ex Post*

### 2. Double Jeopardy Claims

A. Duarte asserts that the Ordinance at issue here constitutes "successive, multiple 'punishments,' arising directly from Plaintiff Aurelio Duarte's prior conviction for a reportable 'sex offense,' which are prohibited by the Double Jeopardy Clause" [Dkt. 1 at 14–15]. The Double Jeopardy Clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *Hendricks*, 521 U.S. at 369, 117 S.Ct. 2072. "Although generally understood to preclude a second prosecution for the same offense, the Court has also interpreted this prohibition to prevent the State from 'punishing twice, or attempting a second time to punish criminally, for the same offense.'" *Id.* (citing *Witte v. United States*, 515 U.S. 389, 396, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995)).

■ A. Duarte's double jeopardy claim fails for the same reasons that his *ex post facto* claim fails.[20] Again, the Court previously determined that the Ordinance is civil in nature, and its effects are not so punitive as to negate the civil intent of the City in enacting the Ordinance. Accordingly, application of the Ordinance to A. Duarte is not a "punishment," and is not a second criminal proceeding for the same sex offense. Thus, the Ordinance does not violate the Double Jeopardy Clause, and

the Court recommends that this claim also be dismissed.

### 3. Violations of the Equal Protection Clause/Right of Association Claim

■ A. Duarte claims that the Ordinance deprives him of his constitutional right to Equal Protection of Law in violation of the Fourteenth Amendment to the United States Constitution [Dkt. 1 at 12]. The Equal Protection Clause "demands that similarly situated persons be treated similarly under the law." *Sonnier v. Quarterman*, 476 F.3d 349, 367–68 (5th Cir.2007) (citing *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). However the Supreme Court has explained that:

[t]he Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons. We have attempted to reconcile the principle with the reality that by stating that, if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end.

---

*Facto* clause, and citing cases that "the overwhelming weight of authority treats such laws as civil and nonpunitive"); *U.S. v. Leach*, 639 F.3d 769, 773 (7th Cir.2011) (concluding that "whether a comprehensive registration regime targeting only sex offenders is penal ... is not an open question" after *Smith* and "joining our sister circuits in concluding that [the federal] SORNA is not an *ex post facto* law"); *Graham*, 2006 WL 2645130, at *4–5 (Oklahoma statute); *Spiteri v. Russo*, No. 12-CV-2780, 2013 WL 4806960, at *11, 37 (E.D.N.Y.2013) (ruling that New York's lifetime registration requirement does not violate the *Ex Post Facto* Clause); *Lee v. State of*

*Alabama*, 895 So.2d 1038, 1044 (Ala.Crim. App.2004) (Alabama statute); *Thompson v. State*, 278 Ga. 394, 603 S.E.2d 233, 235–36 (Ga.2004) (Georgia statute); *Mann v. State*, 278 Ga. 442, 603 S.E.2d 283, 285 (2004) (Georgia statute); *People v. Morgan*, 377 Ill. App.3d 821, 317 Ill.Dec. 339, 881 N.E.2d 507 (2007) (Illinois statute).

20. *See* *Hendricks*, 521 U.S. at 369–71, 117 S.Ct. 2072 (conflating the *ex post facto* and double jeopardy analysis); *Femedeer*, 227 F.3d at 1253–54 (same).

*Id.* at 368 (citing *Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (internal citations omitted)). If a classification does involve a suspect class or a fundamental right, then strict scrutiny will be applied and the law will be upheld only if it is narrowly tailored to further a compelling government interest. *Id.* (citing *Plyler,* 457 U.S. at 217–18, 102 S.Ct. 2382). The Equal Protection Clause exists to ensure every person is protected against intentional and/or arbitrary discrimination. *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). "Even if a neutral law has a disproportionately adverse impact..., it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose." *Sonnier,* 476 F.3d at 368. Discriminatory purpose means that the decision-maker selected a particular course of action at least in part because of, not merely in spite of, its adverse effects. *Id.*

The first step is to identify whether the Ordinance involves a suspect class or a fundamental right in order for the Court to determine which test applies to its review of the Ordinance.[21] A. Duarte asserts that the Ordinance places persons into two classes,[22] both of which involve persons who are required to register as child sex offenders under Texas law [Dkt. 84 at 16]. The first class includes child sex offenders who are not on community supervision and are subject to the residency restrictions in the Ordinance. *Id.* This class includes A. Duarte. The second class is comprised of sex offenders who at the time the Ordinance went into effect were on community supervision and were judicially relieved from compliance with the one-thousand (1,000) foot residency restriction otherwise required as a condition of their supervision under Section 13B of Article 42.12 of the Texas Code of Criminal Procedure.[23] Individuals in the second class are not required to comply with the residency restrictions under one of the six (6) affirmative defenses available in the Ordinance [Dkt. 70, Ex. 1 at 4–5]. A.

21. Notably, in March of 2007, the Texas Attorney General issued an opinion concerning whether municipal sex offender residency restrictions adopted by home-rule municipalities, such as the Ordinance, are preempted by the Texas Code of Criminal Procedure. *See* GA–0526 Tx. Op. Att'y Gen. (2007). The Attorney General explained that a sex offender may comply with both the child-safety-zone state statutes and the municipal ordinances by staying out of the areas described in both. *Id.* at 3 And, in this way, "the state statutes and the municipal ordinances are not repugnant; instead, they are complementary." *Id.* The Attorney General further opined that "residence restrictions do not impinge upon fundamental rights or burden an inherently suspect class and that the residence restrictions rationally relate to the state's legitimate interest in promoting children's safety. The residence restrictions that have been considered thus were found not to violate the Federal Equal Protection Clause." *Id.* at 4–5.

22. A. Duarte previously argued in the Federal Rule of Civil Procedure 12(b) proceedings that the Ordinance contained three classes [Dkt. 9 at 11 (identifying a third class of "non-sex-offenders" who are not subject to the restrictions)]. A. Duarte appears to have retreated from this position, and the City argues that the Court should reject A. Duarte's shifting position [Dkt. 70 at 5 n. 4]. Although the Court acknowledges that A. Duarte's position appears to have changed, nonetheless, the Court will consider his argument that the Ordinance separates sex offenders into two classes.

23. As previously noted, the Ordinance provides an affirmative defense that excuses a registered sex offender from compliance with the 1,500 foot residency restriction if that registered sex offender is already required to abide by a 1,000 foot residency restriction as a condition of community supervision under Article 42.12, Section 13B of the Texas Code of Criminal Procedure [Dkt 70, Ex. 1 at 5; Dkt. 1 at 5–6, ¶ G].

Duarte argues that the imposition of the residency restriction on him, but not on the second class of sex offenders under the Ordinance deprives him of equal protection of the laws [Dkt. 84 at 16]. A. Duarte goes on to argue that the Court must analyze the Ordinance using strict scrutiny because the unequal application of the Ordinance "impinge[s] on personal rights protected by the Constitution" [Dkt. 84 at 18–19].

■ As a preliminary matter, sex offenders and/or persons included on the Texas sex offender registry are not a suspect class. *Stauffer v. Gearhart*, 741 F.3d 574, 587 (5th Cir.2014). In *Stauffer*, the Fifth Circuit considered a policy implemented by the TDCJ's Sex Offender Treatment Program, which confiscated the reading materials of an inmate in order to maximize the effectiveness of the program by allowing the participants to focus all of their energy on fulfilling the program's requirements. *Id.* at 579. The Fifth Circuit found that "any classification of convicted sex-offenders is only subject to a rational basis review." *Id.* at 587; *Creel v. Scott*, 51 F.3d 1042, 1042 (5th Cir.1995) ("Because sex offenders are not members of a suspect class, the state need demonstrate only that the restriction [ ] is reasonably related to the legitimate concerns of safety and security."). Therefore, any argument by A. Duarte that the Ordinance implicates a suspect class fails. Unless the Court finds that there is a fundamental right at issue, it will apply a rational basis review to this case.

■ A. Duarte argues that he has a fundamental right to live where he wishes and also that the Ordinance constitutes a direct regulation on family affairs and/or his right to associate [Dkt. 1 at 7]. Fundamental rights are those that are so implicit in the concept of ordered liberty that neither liberty nor justice would exist if they were sacrificed. *See Williams v. Attorney Gen of Alabama*, 378 F.3d 1232, 1239 (11th Cir.2004) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)). In *Glucksberg*, the Supreme Court said that in order for a right to be fundamental, it must be "deeply rooted in this Nation's history and tradition." *Id.* In addition to the Bill of Rights, the Supreme Court has identified certain other fundamental liberty interests, such as "the rights to marry; to have children; to direct the education and upbringing of one's children; to marital privacy; to use contraception; to bodily integrity; and to abortion." *Id.* at 720, 117 S.Ct. 2258 (internal citations omitted).

■ Defendant points out that over thirty years ago, the Eighth Circuit said "we cannot agree that the right to choose one's place of residence is necessarily a fundamental right. Cases too numerous to mention have upheld restrictions on this interest." *Prostrollo v. Univ. of S.D.*, 507 F.2d 775, 781 (8th Cir.1974) (citations omitted). There is no basis to conclude that this law has changed in the intervening years. *Miller*, 405 F.3d at 713–14. Indeed, in recent years, courts have repeatedly rejected Plaintiffs' contention that there is a fundamental, constitutional right to "reside in a certain place, i.e., with family members," saying "courts have determined there is no fundamental right to live where one pleases." *Graham*, 2006 WL 2645130, at *7. By way of example, in *People v. Leroy*, an Illinois appellate court determined that a probationer had no fundamental constitutional right to live with his mother when she lived within 500 feet of a restricted area. 357 Ill.App.3d 530, 293 Ill.Dec. 459, 828 N.E.2d 769, 776 (2005). In *Spangler v. Collins*, a federal court in Ohio determined that a residency restriction of 1,000 feet did not implicate a fundamental right and therefore the stat-

ute was entitled to rational basis review. No. 2:11–cv–00605, 2012 WL 1340366, at *5 (S.D.Ohio Apr. 16, 2012). Further, in *Miller*, the Eighth Circuit considered and specifically rejected the argument that A. Duarte makes in this case that the Constitution establishes a fundamental right to reside at a location of your choosing. 405 F.3d at 714. As a result the court found that strict scrutiny should not apply, and that the residency statute would only be a violation if it was not rationally related to a legitimate government purpose. *Id.* Likewise, this Court concludes that the right to reside in a location of one's choosing is not a fundamental right.

■ Turning now to A. Duarte's claim that he is being denied the right to associate with family members, and that, as such, the Ordinance constitutes an infringement on the familial relationship and/or regulates family affairs, the Court finds the Ordinance does not affect the family relationship. This claim has repeatedly failed before other courts and also fails before this Court. *See, e.g.,* *McGuire v. City of Montgomery*, No. 2:11–cv–1027–WKW, 2013 WL 1336882, at *10 (M.D.Ala.2013) (citing *Miller*, 405 F.3d at 712); *Formaro*, 773 N.W.2d at 840; *State v. Seering*, 701 N.W.2d 655, 662–64 (Iowa 2005). The Ordinance does not infringe directly on the family relationship. Sex offenders subject to the residency restriction are allowed to live with whomever they want, and to parent their children within their familial home in a manner of their choosing. Moreover, the evidence demonstrates that the Ordinance (as well as this litigation) has had no impact on A. Duarte's ability to reside and interact with his family. A. Duarte has lived with his wife and two children since his release from prison [Dkt. 1 at 4, ¶ C]. The Duartes acknowledges that they are a close family and that they do many things together

[Dkt. 70, Ex. 6 at 139:1–25; 140:1–2]. A. Duarte admits that despite the Ordinance and the litigation, he has been able to give advice to his daughters about school and dating, cook meals, take his children to school, do chores, go out to eat lunch, visit family, and go to the park [Dkt. 70, Ex. 6 at 139:1–25; 140:1–2]. He may do anything he desires within the child protection protected zones, as long as he does not establish a residence therein.

In support of his argument, A. Duarte cites *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) [Dkt. 84 at 20–22]; however, this case is readily distinguishable from the present case. The statute in *Moore* strictly regulated family living arrangements where a grandmother could not live with a grandson as he did not meet the definition of "family" in the statute. *Id.* However, the Ordinance at issue here does not regulate who can live with whom, or dictate which members of a person's family can reside in a certain location.

■ Accordingly, as Plaintiff has failed to identify a fundamental right or liberty interest, the Court finds that the Ordinance will be upheld as long as it is rationally related to a legitimate government purpose. *Hines v. Alldredge*, 783 F.3d 197, 202–03 (5th Cir.2015). Under the rational basis test, the Ordinance is "accorded a strong presumption of validity" and "must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis" for it. *Heller v. Doe*, 509 U.S. 312, 319–20, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993); *Cornerstone Christian Schools v. UIL*, 563 F.3d 127, 139 (5th Cir.2009). Under this standard, A. Duarte bears the burden of showing that there is no conceivable state of facts that could provide a rational basis for the Ordinance. "As long as there is a *conceivable* rational basis for the official action, it is immaterial

that it was not *the* or *a* primary factor in reaching a decision or that it was not actually relied upon by the decision makers or that some other nonsuspect irrational factors may have been considered." *Reid v. Rolling Fork PUD*, 854 F.2d 751, 754 (5th Cir.1988) (emphasis in original). This Court has already noted that the Ordinance rationally advances the government's interest in protecting children. A. Duarte has failed to show that there is no conceivable basis for the Ordinance, and the Court finds that his equal protection claim should be dismissed.

### 4. Liability under 42 U.S.C. § 1983/1988

A. Duarte asserts a claim against the City for municipal liability pursuant to 42 U.S.C. § 1983. "[R]espondeat superior does not apply to municipalities for claims under § 1983." *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir.2009) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Instead, liability may be imposed "only where [the government entity] *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (citing *Monell*, 436 U.S. at 694–95, 98 S.Ct. 2018) (emphasis in original). Thus, in order to hold the City liable under Section 1983, Plaintiff must establish that the "execution of [the City's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Deville*, 567 F.3d at 170. Official policy is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984). "Moreover, when proceeding under § 1983, 'each and any policy which allegedly cause constitutional violations must be specifically identified by a plaintiff.'" *Akins v. Liberty County*, No. 1:10-cv-328, 2014 WL 105839, at *9 (E.D.Tex. Jan. 9, 2014) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001)). Therefore, for Section 1983 liability to attach, a plaintiff must demonstrate three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing, *inter alia, Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir.2005)).

Without an underlying violation of constitutional rights pursuant to a policy, practice, or custom, A. Duarte may not proceed on a § 1983 claim against the City. *See Hernandez v. City of El Paso*, No. EP–08–CV–222–PRM, 2011 WL 3667174, at *6 (W.D.Tex.2011) (where there was no violation of a constitutional right, there is no municipal liability). This Court has already determined that the Ordinance does not violate A. Duarte's constitutional rights, and moreover, A. Duarte does not, in any form or fashion, address Defendant's request to have this claim dismissed in his Response. Thus, the Court recommends that A. Duarte's claim arising

under 42 U.S.C. § 1983/1988 [24] also be dismissed.

### 5. Due Process Claims

A. Duarte contends that he is entitled to procedural due process because he is a person who is fully discharged from his sentence for conviction of a sex offense, he is neither on community supervision or parole, and he was deprived of the right to show that he, as an individual, is not dangerous to the community [Dkt. 84 at 26–27]. The Due Process Clause of the Fourteenth Amendment guarantees that a State will not deprive a person of life, liberty, or property without some form of notice and opportunity to be heard. *See Hamdi v. Rumsfeld,* 542 U.S. 507, 533, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004). A. Duarte argues that his due process claim can be resolved by determining whether he has a fundamental right to live where he wishes to live.

In its Motion, the City argues that A. Duarte's "fundamental right" and "liberty interest" to live where he wants is not a procedural due process claim, but appears to be a substantive due process claim because A. Duarte complains about the City's interference with his liberty interests [Dkt. 70 at 29]. However, A. Duarte specifically states that he is not raising a substantive due process claim, and affirms that his claim is intended to be a procedural due process claim only. "On several prior occasions Plaintiffs have expressly disavowed ever having alleged in this suit a claim based on a violation of 'substantive due process.' Suffice it to say once again, Plaintiffs' claims concerning the violation of their 'substantive' constitutional right to 'liberty' protected by the Fourteenth Amendment, invokes the procedural due process analysis ... which does not inquire into whether an alleged deprivation of liberty should be subjected to, or satisfies, a 'strict' or some less demanding degree of 'scrutiny' " [Dkt. 84 at 30–31]. Therefore, the Court will evaluate A. Duarte's claim as a procedural due process claim and will not consider substantive due process other than noting Plaintiff does not appear to satisfy the requirements to prevail on such a claim.

First and foremost, to the extent that A. Duarte's argument is that the application of the Ordinance to him deprives him of a fundamental right—the right to live where he wishes to live—without notice and a hearing, this argument fails. As determined by the Court *supra,* A. Duarte does not have a fundamental right to live wherever he wishes. If this is indeed the lynchpin of A. Duarte's procedural due process argument, then his argument fails based on the Court's previous determination.

Moreover, similar to the statute at issue in *Miller,* the residency restriction in this case applies to all child sex offenders, regardless of what estimates of future dangerousness might be proven in individualized hearings. 405 F.3d at 709. A. Duarte asserts that the Ordinance contemplates recognition of differing potential risks, as it does not apply to all offenders, and provides a potential exemption for individuals who seek to prove that they are not individually dangerous or likely to offend against neighboring schoolchildren [Dkt. 84 at 30]. In support of his argument, A. Duarte cites the Ordinance's sixth affirmative defense, which states that the residency restriction does not apply if:

24. Plaintiffs' Complaint includes a claim for attorney's fees and costs under various avenues, including 42 U.S.C. § 1988 [Dkt. 1 at 16]; however, since the Court has determined that Plaintiffs cannot be the "prevailing part[ies]" under 42 U.S.C. § 1983, Plaintiffs' claim for attorney's fees and costs under § 1988 should likewise be dismissed.

The person was at the time of the violation subject to community services supervision pursuant to Section 13B of Article 42.12 of the Texas Code of Criminal Procedure, as amended, and the court reduced or waived the one thousand foot (1,000') restriction for a child free zone under Section 13B(a)(1)(B) of Article 42.12 of the Texas Code of Criminal Procedure, as amended, as it applies to the person's residence.

[Dkt. 70, Ex. 1 at 6]. This affirmative defense essentially means that a defendant that, at the time of the violation, was granted community services supervision and the judge determined that the one-thousand (1,000) foot restriction was waived or reduced, then that person has an affirmative defense to the application of the residency restriction. This affirmative defense does not allow for individualized findings of dangerousness. Moreover, even if it did, A. Duarte's risk level is currently moderate, and has been since its increase in March of 2009, indicating that he poses a moderate danger to the community and may continue to engage in criminal sexual conduct [Dkt. 70, Ex. 4 at 5–9], a finding that A. Duarte has not challenged with the Texas Department of Public Safety, or in these proceedings. As such, a finding of dangerousness is not relevant to the application of the Ordinance, and procedural due process does not entitle A. Duarte to a hearing to prove a fact that is not relevant to the City's Ordinance. *Miller*, 405 F.3d at 719; *Conn. Dep't of Public Safety v. Doe*, 538 U.S. 1, 7–8, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003); *Doe v. Cuomo*, 755 F.3d 105, 113 (2d Cir.2014). This applies regardless of whether the statutory scheme involves a sex offender registration statute or a sex offender residency restriction ordinance. *Petro*, 2005 WL 1038846, at *2. Accordingly, A. Duarte's procedural due process claim fails.[25]

### C. The Duarte Family's Due Process Claims

■ W. Duarte, S.D., and B.D. also assert a procedural due process claim against the City, arguing that they have a "fundamental right" and "liberty interest" to "reside with her husband... at the location of her choice" and of "parental consortium," including a right to a "custodial, caring, and nurturing relationship" with A. Duarte [Dkt. 70 at 33; Dkt. 84 at 33–34]. Like A. Duarte's procedural due process claim, the City argues that W. Duarte, S.D., and B.D.'s due process claims appear to be more akin to a substantive due process claim. However, W. Duarte, S.D., and B.D. confirm that their claims are procedural due process claims only, and this Court will treat it as such [Dkt. 84 at 33].

These three Plaintiffs contend that "the question is whether [the Ordinance], by imposing upon a family the dual [sic] of banishment or residential separation, infringes upon the liberty interest that is, at least in part, inherent in a family relationship" [Dkt. 84 at 33]. Plaintiffs fail to identify in either their Complaint or Response what procedure was lacking or inadequate. W. Duarte, S.D., and B.D. are not sex offenders and are not due any process under the Ordinance. As discussed *supra*, A. Duarte received all the process he was due, and Plaintiffs have not identified any further procedural require-

---

**25.** Moreover, A. Duarte's procedural due process claim fails for the additional reason that convicted felons are properly subjected to many restrictions on their constitutional rights which would be objectionable if imposed on non-felons. *See, e.g., Jones v. Helms*, 452 U.S. 412, 420–22, 101 S.Ct. 2434, 69 L.Ed.2d 118 (1981); *Petro*, 2005 WL 1038846, at *1.

790

ments. The Duarte Family, similar to A. Duarte, do not have a fundamental right to live wherever they want. There is no evidence that the application of the Ordinance interfered in any way with W. Duarte's right to reside with her husband, as they have, in fact, been living together since the date A. Duarte was released from prison. Additionally, there is no evidence that S.D. or B.D. were deprived of "parental consortium" or a "custodial, caring, and nurturing relationship" with A. Duarte. On the contrary, the Duartes describe themselves as very close, and state that their relationship has not been affected by this lawsuit or the Ordinance [Dkt. 70, Ex. 13 (2015 deposition) at 28:11–25, 28:16–17; Ex. 6 (2015 deposition) at 7:21–23, 8:3–17; Ex. 14 at 10:9–18, 14:2–11; Ex. 15 at 9:19–22, 10:1–14]. There is ample evidence in the summary judgment record that the family continues to spend time together, both in Lewisville and in Lake Dallas, and they consider themselves a close family. S.D. testified that her relationship with her father, A. Duarte, was good and had always been good [Dkt. 70, Ex. 15 at 10–11]. B.D. also testified that she has a loving, normal relationship with her father, which has been the same throughout this lawsuit [Dkt. 70, Ex. 14 at 13:19–25; 14:1–11]. A. Duarte also testified that he feels that he has a good relationship with both daughters, and still loves them, cares for them, gives them parental advices, and other things [Dkt. 70, Ex. 6 (2015 deposition) at 8:3–17]. Despite the application of the Ordinance, A. Duarte has had the opportunity to counsel his daughters and participate in their upbringing. There is simply no evidence to suggest that the Ordinance prevented W. Duarte, S.D., or B.D. from having a meaningful relationship with their husband/father, and the Duarte Family's procedural due process claim fails.

## D. Plaintiffs' Miscellaneous Claims

### 1. Plaintiffs' Declaratory Judgment Claim

All Plaintiffs assert a claim for declaratory judgment, seeking the Court to declare the Ordinance unconstitutional. However, the Declaratory Judgment Act is remedial, and a party seeking declaratory relief must have an underlying cause of action. See Collin County, Texas v. Homeowners Assoc. for Values Essential to Neighborhoods, 915 F.2d 167, 170 (5th Cir.1990). This Court has recommended the dismissal of each of Plaintiffs' causes of action, and none remain. Moreover, Plaintiffs' declaratory judgment claim is duplicative of other relief that is requested by Plaintiffs' claims and should be dismissed for this additional reason. See Wuenschel v. Steris Corp., No. 4:10–CV–7, 2010 WL 1068156, at *2 (E.D.Tex. March 16, 2010) (citing Regus Management Group, LLC v. Int'l Bus. Machine Corp., No. 3:07–CV–1799–B, 2008 WL 2434245, at *4 (N.D. Tex. June 17, 2008) (dismissing declaratory judgment claim because it was duplicative of breach of contract claim and finding that "courts regularly reject declaratory judgment claims that seek resolution of matters that will already be resolved as part of the claims in the lawsuit"). Plaintiffs' declaratory judgment claim is duplicative of their claims for violations of the Ex Post Facto Clause, the Equal Protection Clause, and/or procedural due process, as they simply seek a declaration that the Ordinance is unconstitutional. For this additional reason, the Court recommends Plaintiffs' declaratory judgment claim be dismissed.

### 2. Plaintiffs' Claim for Injunctive Relief

Plaintiffs seek a permanent injunction pursuant to 28 U.S.C. § 1343, prohibiting the City from applying or enforc-

ing the Ordinance. In order to establish a claim for injunctive relief, a party must show: (1) substantial likelihood that the moving party will prevail on the merits of the underlying suit; (2) a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to the movant outweighs the threatened harm the injunction may do to the nonmovant; and (4) granting the injunction and/or restraining order will not deserve the public interest. *Affiliated Prof'l Home Health Care Agency v. Shalala,* 164 F.3d 282, 285 (5th Cir.1999). The Court has already considered the merits of Plaintiffs' claims and has recommended that these claims be dismissed. Plaintiffs cannot show that the moving party will prevail on the merits of this litigation. Additionally, Plaintiffs have not established that they will suffer irreparable injury and no adequate remedy at law exists. Other courts have denied similar requests for injunctive relief. For example, in *Graham,* previously cited herein, the Northern District of Oklahoma considered a request for injunctive relief on a sex offender registration and residency statute, and found that the plaintiff failed to establish an irreparable injury. 2006 WL 2645130. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Id.* at *9. A plaintiff suffers irreparable injury when the Court would be unable to grant an effective monetary remedy because damages would be inadequate or difficult to ascertain. *Id.* Plaintiff has made no such showing here, and has moved for nominal and compensatory damages. Further, "[g]ranting Plaintiff's Motion for Injunction would expose children to the very harm Section 590 seeks to protect against." *Id.; see also Petro,* 2005 WL 1038846, at *4 ("[B]y enjoining the statute, the Court would be exposing the beneficiaries of the statute to the very harm it was designed to protect against."). The Court recommends that Plaintiffs' claim for injunctive relief should be dismissed.

Moreover, a claim for injunctive relief is a remedy that does not stand alone, but requires a viable underlying legal claim. *See Horne v. Time Warner Operations, Inc.,* 119 F.Supp.2d 624, 630 (S.D.Miss. 1999), *aff'd by* 228 F.3d 408 (5th Cir.2000). Because the Court has determined that there is no unconstitutional action at issue here, there is no deprivation, and A. Duarte is not entitled to injunctive relief. *See Wolfer v. Thaler,* 525 F.2d 977, 979 (5th Cir.1976), *cert. denied,* 425 U.S. 975, 96 S.Ct. 2176, 48 L.Ed.2d 800 (1976) (once defendant was absolved of liability for damages under Section 1983, a substantial controversy of sufficient immediacy and reality between the parties regarding the constitutionality of the law no longer existed); *Horne,* 119 F.Supp.2d at 630. For these reasons, the Court recommends Plaintiffs' claims for injunctive relief be dismissed.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court recommends that Defendant's Motion for Summary Judgment and Brief in Support [Dkt. 70] be **GRANTED**. The Court recommends Plaintiff A. Duarte's claims for violations of (1) the *Ex Post Facto* Clause of Article 1, Section 10 to the United States Constitution; (2) the Double Jeopardy Clause of the Fifth Amendment; (3) the Equal Protection Clause of the Fourteenth Amendment; (4) his civil rights under 42 U.S.C. § 1983; and (5) the Due Process Clause of the Fourteenth Amendment be dismissed with prejudice. The Court further recommends that the Duarte Family's procedural due process claim be dismissed with prejudice. Moreover, the Court recommends that all Plaintiffs'

claims for declaratory judgment and injunctive relief be dismissed with prejudice and any request for fees be denied.

Additionally, the Court finds that Defendant's objection to Plaintiff's Exhibit 1 is **SUSTAINED,** and Plaintiffs' Exhibit 1 is hereby **STRICKEN** from the record as hearsay; and further finds that Defendant's objection to Plaintiff's Exhibit 2 is **OVERRULED.**

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected—to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir.1996) (en banc), *superceded by statute on other grounds,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 21st day of August, 2015.**